**MEGA RENEWABLES and Roaring Creek Ranch, Plaintiffs,**

v.

**COUNTY OF SHASTA, Steven Swendiman, Robert Bosworth, Abe Hathaway, Don Maddix, Roy Peters, Jack C. Parnell, Director, California Department of Fish and Game, A.E. Naylor, Regional Manager, Department of Fish and Game, Defendants.**

**Civ. No. S–85–1299 EJG.**

United States District Court, E.D. California.

Feb. 25, 1986.

Stuart L. Somach, McDonough, Holland & Allen, Sacramento, Cal., for plaintiffs.

Dennis Smaage, Deputy Atty. Gen., Sacramento, Cal., David Frank, Asst. County Counsel, Shasta County, Wells, Wingate, Small & Graham, Redding, Cal., for defendants.

## ORDER REGARDING
## SUMMARY JUDGMENT

EDWARD J. GARCIA, District Judge.

This matter came before the court on January 21, 1986 pursuant to the plaintiffs' motion for partial summary judgment on counts 1 and 2 of their complaint, and plaintiffs' motion to dismiss the counterclaim by defendant County of Shasta. This lawsuit arises out of a dispute between plaintiffs and the defendants, The State of California Department of Fish and Game and the County of Shasta over the validity of Section 1603 of the California Fish and Game Code and Shasta County Ordinance 4371. Plaintiffs contend that both the California statute and the county ordinance are facially unconstitutional to the extent that they address hydroelectric power projects because the regulation of such projects is preempted by the Federal Power Act.

### Plaintiffs' Motion for
### Summary Judgment

Plaintiffs move pursuant to Rule 56 of the Fed.R.Civ.P. for judgment in their favor as a matter of law as to counts 1 and 2 of their complaint. Count 1 is a claim for declaratory relief and requests a determination that Shasta County Ordinance Section 4371 is preempted by the Federal Power Act. It also requests injunctive relief in the form of an order enjoining the county defendants from applying or enforcing the ordinance against plaintiffs. Count 2 requests the same relief with respect to Section 1603 of the California Fish and Game Code. All parties herein submit that there are no material facts in dispute and that the issues presented are purely legal in nature; i.e. the facial validity of the two laws challenged by plaintiffs. Furthermore, the Ninth Circuit's ruling in *Leslie Salt Co. v. Froehlke,* 578 F.2d 742 (9th Cir.1978) suggests that such disputes concerning regulatory jurisdiction pose purely legal issues appropriate for summary adjudication.

The Supreme Court has recently summarized the general principles applicable for determining whether state and local law has been preempted by federal law:

It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to" federal law. *Gibbons v. Ogden,* 9 Wheat. 1, 211 [6 L.Ed. 23] (1824) (Marshall, C.J.). Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to preempt state law by so stating in express terms. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977). In the absence of express preemptive language, Congress' intent to preempt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Ibid.; see Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed. 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz, supra* at 67 [61 S.Ct. at 404]. *See generally Capital Cities Ca-*

*ble, Inc. v. Crisp,* 467 U.S. 691, [104 S.Ct. 2694 at 2700] [81 L.Ed.2d 580] (1984). We have held repeatedly that state laws can be preempted by federal regulations as well as by federal statutes. *See,* e.g., *Capital Cities Cable Inc. v. Crisp, supra* at [2700–2701]; *Fidelity Federal Savings & Loan Assn. v. De La Cuesta,* 458 U.S. 141, 153–154 (1982), 102 S.Ct. 3014, 3022–3023, 73 L.Ed. 664 (1982); *United States v. Shimer,* 367 U.S. 374, 381–383 [81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908] (1961). Also, for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws. *See,* e.g., *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624 (1973), 93 S.Ct. 1854, 36 L.Ed. 547. *Hillsboro County, Fla. v. Automated Med. Laboratories,* 471 U.S. 707, 105 S.Ct. 2371 at 2375, 85 L.Ed.2d 714 (1985).

Because Section 1603 of the Fish and Game Code and Shasta County Ordinance 4371 purport to apply to plaintiffs' hydropower project in significantly different ways, each will be analyzed separately.

### *Section 1603*

Section 1603 of the California Fish and Game Code provides as follows:

It is unlawful for any person to substantially divert or obstruct the natural flow or substantially change the bed, channel, or bank of any river, stream or lake designated by the department, or use any material from the streambeds, without first notifying the department of such activity, except when the department has been notified pursuant to Section 1601. The department within 30 days of receipt of such notice, or within the time determined by mutual written agreement, shall when an existing fish or wildlife resource may be substantially adversely affected by such activity, notify the person of the existence of such fish and wildlife resource together with a description thereof, and shall submit to the person its proposals as to measures necessary to protect fish and wildlife.

Upon a determination by the department of the necessity for onsite investigation or upon the request for an onsite investigation by the affected parties, the department shall notify the affected parties that it shall make onsite investigation of the activity and shall make such investigation before it shall propose any measure necessary to protect the fish and wildlife.

Within 14 days of receipt of the department's proposals, the affected person shall notify the department in writing as to the acceptability of the proposals, except that this time may be extended by mutual agreement. If such proposals are not acceptable to the affected person, then that person shall so notify the department. Upon request the department shall meet with the affected person within seven days of receipt of such notification or such time as may be mutually agreed upon for the purpose of developing proposals which are acceptable to the department and the affected person. If mutual agreement is not reached at such meeting a panel of arbitrators shall be established; provided, however, that the appointment of such panel may be deferred by mutual consent of the parties. The panel shall be established within seven days of such meeting and shall be composed of one representative of the department, one representative of the affected person, and a third person mutually agreed upon, or if no agreement can be reached, the third person shall be appointed in the manner provided by Section 1281.6 of the Code of Civil Procedure. The third person shall act as panel chairman. The panel shall have power to settle disagreements and make binding decisions regarding fish and wildlife modifications. Such arbitration shall be completed within 14 days from the day that the composition of the panel is established, unless the time is extended by mutual agreement. Expenses of the department representative are to be borne by the department, expenses of the representative of the person who diverts or obstructs the natural flow or changes the bed of any river, stream or lake, or uses any material from the streambeds shall be borne by such person; expenses of the chairman are to be paid one-half by each party.

It is unlawful for any person to commence any activity affected by this section until the department has found it will not substantially adversely affect an existing fish or wildlife resource or until the department's proposals, or the decisions of a panel of arbitrators, have been incorporated into such projects. If the department fails to act within 30 days of the receipt of the notice, the person may commence such activity.

It is unlawful for any person to engage in a project or activity affected by this section, unless such project or activity is conducted in accordance with the department's proposals or the decisions of the panel of arbitrators.

With regard to any project which involves routine maintenance and operation of water supply, drainage, flood control, or waste treatment and disposal facilities, notice to an agreement with the department shall not be required subsequent to the initial notification and agreement unless the work as described in the agreement is substantially changed, or conditions affecting fish and wildlife resources substantially change, and such resources are adversely affected by the activity conducted under the agreement. This provision shall be applicable in any instance where notice to and agreement with the department have been attained prior to the effective date of this chapter.

The provisions of this section shall not be applicable to emergency work necessary to protect life or property. Notification by the person performing such emergency work shall be made to the department within 14 days of commencement of such emergency work.

In attacking this California statute, plaintiffs contend that the Federal Power Act of 1920, 16 U.S.C. § 792 *et seq.*, provides for an all inclusive statutory scheme for the licensing and regulation of hydroelectric

projects on navigable waters. Plaintiffs further contend that the federal scheme is exclusive of any state involvement except for state laws as they pertain to the determination of property rights. Plaintiffs rely on *First Iowa Hydro-Electric Coop v. Federal Power Commission,* 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1945), which held that the Federal Power Act establishes a dual system of control with "a separation of those subjects which remain under the jurisdiction of the states from those subjects the Constitution delegates to the United States and over which Congress vests with the Federal Power Commission [now the Federal Energy Regulatory Commission, hereafter referred to as FERC] with authority to act." *Id.* at 167, 66 S.Ct. at 913. The court stated that "the duality of control consists merely of the division of the common enterprise between two cooperating agencies of Government, each with final authority in its own jurisdiction. The duality does not require two agencies to share in the final decision of the same issue." *Id.* At issue in *First Iowa* was the question of how far state law may extend into this dual system of jurisdiction. The Iowa statute in question sought to impose a permit requirement independent of any license from the Federal Power Commission. In holding that the Iowa statute was preempted and therefore invalid, the court analyzed the same two sections of the Federal Power Act which are now disputed in this action. Those sections are §§ 27 and 9(b) (16 U.S.C. §§ 821 and 802(b), respectively). Section 27 provides that:

Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way interfere with the laws of the respective states relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

The Supreme Court in *First Iowa* held that the effect of Section 27 in protecting state laws from supersedure is limited to those regarding the control or use of water in irrigation or for municipal or other uses of the same nature. The court concluded that

§ 27 does not save for the states the power to impose project permit requirements.

Section 9(b) requires an applicant for a federal license to submit to the commission:

Satisfactory evidence that the applicant has complied with the requirements of the laws of the state or states within which the proposed project is to be located with respect to the bed and banks and to the appropriation, diversion, and use of water for power purposes and with respect to the right to engage in business of developing, transmitting, and distributing power, and in any other business necessary to affect the purposes of a license under this chapter.

The court in *First Iowa* concluded that Section 9(b) neither adds nor detracts from the force of local laws, but rather, held that:

[t]he need for compliance with applicable state laws, if any, arises not from this federal statute but from the effectiveness of the state statutes themselves.

*First Iowa, supra* at 178, 66 S.Ct. at 918. In analyzing the effect of these two sections on the issue of supersedure, the court concluded that the Act leaves no room for the states to require their consent before a federally licensed project may proceed. The court found that the state of Iowa's permit requirement, if tolerated, would vest in the state a veto power over the federal project and that such a power could easily destroy the effectiveness of the Federal Act. Accordingly, the court held that the Iowa permit law was superseded by the Federal Power Act.

In the instant case, the state defendants (unlike the county defendants) do not dispute the primary jurisdiction of FERC over this project. Likewise, the state defendants disavow any veto authority to prohibit or ban the construction of the project. Moreover, the California statute itself does not impose a state permit requirement. Notwithstanding those jurisdictional concessions, plaintiffs contend that the only authority that the states may exercise regarding projects covered by the Federal

Power Act is the determination of property rights regarding water use or land ownership. Plaintiffs understand *First Iowa* to hold that all other project issues are under the exclusive jurisdiction of FERC and preempted by federal law. Both sides rely on selectively quoted language from the *First Iowa* opinion as dispositive of this issue, that opinion containing language seemingly supportive of each side. However, this court does not agree with plaintiffs' broad reading of the holding in *First Iowa* and does not find *First Iowa* dispositive of this case.

In rejecting the argument that Section 27 allows for state permit requirements, the court stated that "the phrase 'any vested right acquired therein' further emphasizes the application of the Section to property rights." In rejecting the same argument based on Section 9(b) the court stated that the section adds or detracts nothing regarding the state's authority and does not, itself, require compliance with any state laws. Plaintiffs assert that these narrow readings of the two sections leads to the conclusion that all laws pertaining to FERC licensed projects are necessarily preempted. However, the court went on to specify that "insofar as those laws have not been superseded by the Federal Power Act, they remain as applicable and effective as they were before its passage." *Id.* Therefore, it appears that *First Iowa* did not answer the preemption question under the Federal Power Act for all purposes. Nor did it answer the preemption question raised in this dispute but held only that states may not impose permit requirements nor exercise veto power over any federally licensed project.

In this case Section 1603 of the California Fish and Game Code does not, on its face, purport to exercise such authority. California does not dispute the propriety of the license issued by FERC nor does it seek to stop or impede the progress of the project. Rather, California merely seeks to enforce its procedures under which the State Department of Fish and Game may contribute its expertise and information on how to mitigate the effect of the project on fish and wildlife. To the extent that Section 1603 requires notice to the Department of Fish and Game of the development plans so that the department may submit its suggestions, it does not appear to be the type of state "veto" that is prohibited by *First Iowa.* Although Section 1603 requires plaintiffs to submit the matter to binding arbitration in the event that plaintiffs refuse to accept the mitigation measures recommended by the department, the California statute does not purport to vest in the department the authority to decide whether or not the project itself should go forward. Moreover, even though one may conceive of an abuse of Section 1603 in a manner that would result in the imposition of prohibitively costly and impractical mitigation measures which might effectively terminate the project (a result that would clearly be prohibited under *First Iowa* ), nothing on the face of the statute requires nor contemplates that result. Nor is there any reason now to construe the statute in a manner that would permit such a result under its proper application. Furthermore, plaintiffs' objections to Section 1603 are in the form of a facial challenge to its validity rather than an "as applied" attack.[1]

Whether improper applications might be surmised as possible, it is sufficient to note that Section 1603 does not require a "permit" and it does not prohibit the construction of the project. Instead, it requires that information concerning the project be provided to the Department of Fish and Game so that the Department can make a recommendation for mitigation measures. In this respect, Section 1603 complements rather than duplicates or conflicts with federal law. The plain language of Section 9 of the Act seems to contemplate just such procedures whereby the states may contribute their expertise and information with respect to the various topics referred to in § 1603 of the California Fish and Game

---

1. It is noted that plaintiffs' unwillingness to submit to or accept the validity of the Section 1603 procedure appears to have prompted the instant lawsuit.

Code. Furthermore, the license granted by FERC requires the plaintiff to consult with the appropriate agencies prior to the preparation of the plan for the project regarding bed and banks and fish and wildlife. (Plaintiffs' opening brief, pp 5 and 6 and exhibit A to California's opposition brief). When read together, the Federal Power Act, the terms and conditions of the FERC license and Section 1603 of the California Fish and Game Code appear complementary and consistent with the "duality" provisions of the Act.

Because the California statute does not impose a permit requirement, nor on its face purport to give the state a veto power over the FERC issued license, *First Iowa* is not dispositive of the question raised here. The remaining issue is whether, under traditional rules of supersedure, the California statute has been preempted.

The first and perhaps most obvious way for Congress to preempt state law is to expressly so state. That has not occurred here. As recognized in *First Iowa,* the Act (including §§ 27 and 9(b)) sets forth a contrary policy and establishes a system of dual jurisdiction. The states play a subordinate role, yet one that remains important and complementary to the federal role.

▇ State and local law may also be superseded by so-called "entire field" preemption. Pre-emption of an entire subject matter may be inferred where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Hillsboro County, supra.* Plaintiffs assert that the Supreme Court has recently implied that the *First Iowa* decision established this broad form of preemption over the entire field of water power projects. In support of this contention, plaintiffs refer to Fn 34 of *Pacific Gas and Electric Co. v. State Energy Resources*

*Conservation and Development Commission,* 461 U.S. 190 at 223, 103 S.Ct. 1713, at 1732, 75 L.Ed.2d 752 (1983). In that case the court considered the question of preemption in the context of the Atomic Energy Act and held that a California law neither conflicted nor overlapped with federal laws and was not preempted on those grounds. In rejecting an argument for "entire field" preemption, the Court appears to have distinguished *First Iowa.* The Court in *PG & E* at Fn 34 said that the Atomic Energy Act does not give the Nuclear Regulatory Commission the comprehensive planning responsibility that was found in *First Iowa.* The inference argued by plaintiffs is that if it was necessary to distinguish *First Iowa* on this point to avoid "entire field" preemption, then *First Iowa* necessarily established such preemption. However, Fn 34 of *PG & E* also points out that the Iowa statute actually interfered with the federal law and that such interference was crucial to the outcome in *First Iowa.* The court found no such interference by the California law in *PG & E.* Similarly, there is no such interference imposed here. Moreover, *First Iowa* itself left open the question of other forms of preemption and turned squarely on the concern of states exercising veto power over federal projects.[2] Because the Act here in dispute fails to express a federal interest of such predominance that there is no room for state involvement, there is no reason to assume that enforcement of California's law regarding mitigating measures is precluded.[3] Moreover, given the Supreme Court's refusal in *PG & E* to find that the important federal interest in nuclear power is so dominant as to preempt that entire field, this court is reluctant to infer "entire field" preemption on the subject of hydroelectric projects. Surely the federal

---

**2.** First Iowa carefully pointed out that the need for compliance with state laws arises from the effectiveness of the state statutes themselves and that to the extent such laws are not superseded by the Act they remain applicable. *Supra* at 178, 66 S.Ct. at 918. The court thereby left open

the question of whether state laws falling short of a project veto are preempted.

**3.** The plain language of §§ 27 and 9(b) of the Federal Power Act and the recognition in *First Iowa* of a dual system of authority underscores a policy contrary to such an assumption.

interest in nuclear power is as great or greater than that in hydro-power.

Finally, this court notes that the Ninth Circuit has had occasion to consider the question of preemption in light of *First Iowa* and has suggested that the crux of the holding was permit requirements that intrude on a federal agency's permit authority. *Granite Rock Co. v. California Coastal Commission*, 768 F.2d 1077 (9th Cir.1985). Although the particular state law in question was found to be preempted, the court in *Granite Rock* stated that "the court has recognized that the *First Iowa* doctrine extends only to state permit mechanisms that actually intrude into the sphere of federal permit authority." *Id.* at 1082. It, therefore, appears that the basis for preemption under the *First Iowa* doctrine is not entire field preemption due to a predominate federal interest that necessarily excludes state involvement beyond mere determinations of property rights, as argued by plaintiffs. Rather, the inquiry under the doctrine is whether the state requirements intrude into, or interfere with, FERC's permit authority. Nothing on the face of § 1603 of the Fish and Game Code provides for such intrusion. Instead, the statute has carefully stopped short of requiring a state permit. Because California does not here attempt to determine whether the project should be built but rather requires a procedure for the state's advice (and if necessary arbitration) on how to mitigate resulting wildlife impact and still proceed with the project, FERC's permit authority is not intruded upon.

■ Because § 1603 of the California Fish and Game Code offends neither the holding in *First Iowa* nor the dual authority policies expressed in the Federal Power Act, it is not preempted by federal law. Although the federal interests involved are important and the federal regulation comprehensive, both the Federal Power Act and the regulations (and indeed the FERC license itself) contemplate the type of limited state participation involved here. Section 1603 does not conflict nor interfere with federal law but rather works in harmony with a federal statutory scheme that calls for just such state participation.

### County Ordinance 4371

Unlike the Fish and Game Code, Shasta County Ordinance 4371 imposes a permit requirement for the construction of any small hydro-power project without regard to whether the project is exempt from the FERC licensing jurisdiction or whether a FERC license has been issued. Plaintiffs point out that this permit requirement is precisely the exercise of a local "veto power" over a federally licensed project that the Supreme Court prohibited in *First Iowa*. Plaintiffs request this court to declare the ordinance preempted and invalid. The county has answered that plaintiffs have failed to exhaust certain county administrative remedies, that plaintiffs only speculate that the county permit requirement might be inconsistent with the FERC license and that plaintiffs should be estopped from denying the validity of the county ordinance because they represented to FERC that all county requirements would be met. Additionally, the county has responded with a counterclaim that seeks to invalidate the FERC issued license on the grounds that FERC had no jurisdiction over this project. The County's jurisdictional argument asserts that Roaring Creek at the site here in question, is non-navigable. The county also raises certain procedural questions as to the manner in which the FERC license was issued.

Plaintiffs now move for summary judgment on count 1 of their complaint regarding the county ordinance. Plaintiffs also move under Federal Rule 12(b)(6) to dismiss the counterclaim for failure to state a claim upon which relief may be granted.

■ As for the summary judgment motion, the question appears purely legal and therefore ripe for summary adjudication. *Leslie Salt Co. v. Froehlke, supra.* Shasta County's opposition to the motion advances primarily the question of FERC's jurisdiction to issue a permit for this project. However, to the extent the county has raised the question of exhaustion in its answer, the court notes that if the county permit ordinance is invalid, so are the administrative remedies and procedures for appealing a denial of the permit. The

county's estoppel argument and attacks on the alleged procedural defects in the issuance of the FERC license are subject to the same analysis as the jurisdiction question. Whether or not FERC should have issued a license for this project is a question that should have been litigated before FERC and, if necessary, appealed directly to the Ninth Circuit. *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958). Section 313 of the Act (16 U.S.C. § 825*l*(b)) requires that a party contesting a FERC determination to pursue judicial review directly before the Circuit Court of Appeals. Whether the county challenges FERC's jurisdiction in this instance or the propriety of FERC issuing plaintiffs a license based on other procedural grounds, including compliance with FERC's own regulations, the county's only remedy is to seek judicial review in the appropriate court. That court is either the Ninth Circuit or the D.C. Circuit but not this court. The Supreme Court held in *City of Tacoma,* that § 313 of the Act establishes "the specific, complete and exclusive mode for judicial review of FERC orders." *Id.* at 326, 78 S.Ct. at 1213. That the county did not intervene and participate in the FERC proceeding does not alter that result. The Supreme Court did not limit its holding to only parties who so participated and § 313 is not limited in that respect. Rather, § 313 provides that "no proceeding to review any order of the commission shall be brought by any person unless such person shall have made application to the commission for a rehearing thereon." If an appeal is to be taken from the grant or denial of a rehearing request, § 313(b) confers exclusive jurisdiction in the Court of Appeals. For that reason, the county's opposition brief is not responsive to the preemption question under *First Iowa.* *First Iowa* clearly held that states (or in this case the county) may not impose permit requirements on federally licensed hydro-power projects. The county does not dispute the fact that the ordinance does just that. Accordingly, the Shasta County Ordinance 4371 is preempted by the Federal Power Act and is invalid.

*Plaintiff's Motion for Dismissal*

Plaintiffs move under Federal Rule 12(b)(6) to dismiss the county's counterclaim for failure to state a claim upon which relief may be granted. Plaintiffs also move to dismiss under Federal Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated above, the motion must be granted. The county's counterclaim seeks judicial review of FERC's order issuing the permit for this disputed project. This court lacks subject matter jurisdiction to review that order. Section 313(b) of the Act (16 U.S.C. § 825*l*(b)) and *City of Tacoma, supra.*

*Conclusion*

For the reasons stated above, it is hereby ORDERED that plaintiffs' motion for partial summary judgment as to count 1 of the complaint is granted. It is further ORDERED that plaintiffs' motion for partial summary judgment as to count 2 of the complaint is denied.

Additionally, it is ORDERED that plaintiffs' motion to dismiss the County of Shasta's counterclaim is granted pursuant to Federal Rule 12(b)(1).

IT IS SO ORDERED.