**WISCONSIN VALLEY IMPROVEMENT COMPANY, Northern States Power Co., Nekoosa Papers, Inc., Weyerhaeuser Paper Company, Tomahawk Power & Pulp Company, and N.E.W. Hydro, Inc., Plaintiffs,**

v.

**George E. MEYER, in his capacity as Secretary of the Wisconsin Department of Natural Resources, Defendant.**

No. 95–C–0132–C.

United States District Court,
W.D. Wisconsin.

Dec. 28, 1995.

As Amended Jan. 31, 1996.

Michael D. Fischer, Foley & Lardner, Milwaukee, WI, for Wisconsin Valley Improvement Co., Northern States Power Co., Nekoosa Papers, Inc., Weyerhaeuser Paper Company, Tomahawk Power & Pulp Company and N.E.W. Hydro, Inc.

Philip Peterson, Assistant Attorney General, Madison, WI, for George E. Meyer.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for declaratory and injunctive relief brought under the supremacy clause of the United States Constitution. Plaintiffs are challenging Wis.Stat. § 23.42, which authorizes the Wisconsin Department of Natural Resources to impose fees on applicants for hydropower licenses to cover the costs of the studies the department conducts to determine the environmental impact of proposed hydroelectric projects. The costs are apportioned among the applicants according to the amount of hydropower to be generated. Plaintiffs contend that the state's ability to impose such fees has been preempted by the Federal Power Act, 16 U.S.C. §§ 791–823b. The case is before the court on the cross-motions for summary judgment of defendant George E. Meyer, Secretary of the Wisconsin Department of Natural Resources and plaintiffs Wisconsin Valley Improvement Company, Northern States Power Co., Nekoosa Papers, Inc., Weyerhaeuser Paper Company, Tomahawk Power & Pulp Company and N.E.W. Hydro, Inc.

Plaintiffs argue 1) that § 23.42 is not within the field saved for state authority under the Federal Power Act and is therefore preempted by implication and 2) that § 23.42 is in direct conflict with the 1986 and 1992 amendments to the Federal Power Act. Defendant denies that the Wisconsin statute is preempted. He contends that implicit preemption applies only when a state exercises a "veto power" over a federally licensed project by imposing requirements that either prevent a project from operating or that affect matters regulated by federal law. As a second line of defense, defendant argues that § 23.42 does not conflict with the Federal Power Act because Congress passed the 1986 and 1992 amendments with the intent that the states would be reimbursed for the expenses they incurred in conducting fish and wildlife studies and the Wisconsin statute merely does what the federal law would do if Congress carried out its intent. I conclude that plaintiffs are entitled to summary judgment because they have demonstrated that the Federal Power Act occupies the field of hydropower licensing except with respect to proprietary rights retained by the states and that Wis.Stat. § 23.42 conflicts directly with the 1986 and 1992 amendments to the Federal Power Act. I reach this conclusion reluctantly because of the unfairness to the states of encouraging them to undertake environmental studies in connection with hydroelectric projects but refusing to reimburse them for the significant costs of the studies.

Solely for the purpose of deciding the parties' motions, I find from the parties' proposed findings of fact that there is no genuine dispute about the following material facts.

## UNDISPUTED FACTS

Plaintiffs Wisconsin Valley Improvement Company, Northern States Power Co., Nekoosa Papers Inc., Weyerhaeuser Paper Company, Tomahawk Power and Pulp Company and N.E.W. Hyrdro, Inc. are Wisconsin corporations that applied to the Federal Energy Regulatory Commission for new licenses to operate hydroelectric power projects within the Western District of Wisconsin,

pursuant to 16 U.S.C. § 808. All of the hydroelectric projects are located on navigable waters over which the United States has jurisdiction, as set forth in the Federal Power Act.

Defendant George E. Meyer is Secretary of the Wisconsin Department of Natural Resources and is the highest ranking official of the Department of Natural Resources. He is responsible for the exercise of the department's authority under state statutes and regulations and for overseeing the department's compliance with applicable federal laws. The department is the state agency responsible for implementing Wisconsin laws relating to the protection, development and use of forests, fish and game, lakes, streams, plant life, flowers and other outdoor resources in Wisconsin. The department is a "fish and wildlife agency" within the meaning of the Federal Power Act.

The Federal Power Act establishes a comprehensive federal scheme for the licensing of hydroelectric power projects on navigable waters. Under the act, the Federal Energy Regulatory Commission (formerly the Federal Power Commission) is the only regulatory authority empowered to issue hydroelectric power project licenses.

The Federal Power Act requires new license applicants to consult with state fish and wildlife agencies and conduct studies with them as appropriate. 16 U.S.C. § 808(c)(1). These agencies may, but need not, consult with the Federal Energy Regulatory Commission regarding the impact of hydroelectric power projects on state natural resources. It is mandatory for the commission to give "equal consideration" not only to the power and development purposes for which licenses are issued, but also to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of fish and wildlife, the protection of recreational opportunities and the preservation of environmental quality. 16 U.S.C. § 797(e). Each license issued under the Federal Power Act must include conditions for the protection, mitigation of damage to, and enhancement of fish and wildlife that must be based on recommendations received from state fish and wildlife agencies among others. 16 U.S.C. § 803(j)(1). The Federal Energy Regulatory Commission may reject a state agency's recommendation as inconsistent with the Federal Power Act only after attempting to resolve the inconsistency, giving due weight to the recommendations, expertise and statutory responsibilities of state agencies. 16 U.S.C. § 803(j)(2). If, after such an attempt, the commission does not adopt a recommendation of a state agency in whole or in part, it must publish findings that adoption of such recommendation is inconsistent with the purpose and requirements of the Federal Power Act or other applicable laws and that the conditions selected by the commission comply with the statute's requirements for fish and wildlife protection. *Id.*

In 1992, Congress amended the Federal Power Act to allow the commission to reimburse state agencies for reasonable and necessary costs incurred in connection with studies or reviews they carry out in administering their responsibilities under the Federal Power Act. 16 U.S.C. § 803(e)(1). This reimbursement is "subject to annual appropriations Acts [of Congress]." *Id.* The Federal Power Act sets forth the manner in which state agencies are to seek reimbursement for such costs through the Federal Energy Regulatory Commission. Before the passage of the 1992 amendment, the Federal Power Act did not permit states to seek or obtain reimbursement directly from the Federal Energy Regulatory Commission of any costs associated with the review and evaluation of proposed hydroelectric projects.

The Federal Energy Regulatory Commission construes the proviso, "subject to annual appropriations Acts," as making 16 U.S.C. § 803(e)(1) authorizing legislation that may be implemented only if Congress appropriates funds for the purpose of reimbursing states for their expenditures. In 1994, the Federal Energy Regulatory Commission had no funds available to pay state agencies under 16 U.S.C. § 803(e)(1) and did not expect to include any appropriation request for the program in 1995.

In 1989, Wisconsin enacted Wis.Stat. § 23.42, which permits the Department of Natural Resources to impose charges on applicants for Federal Energy Regulatory Commission licenses to help fund the depart-

ment's review and evaluation of applications. The statute provides that "the department may charge fees to applicants for reviewing and evaluating applications and notifications of intent under [the Federal Power Act]." Wis.Stat. § 23.42. Defendant Meyer has directed the Department of Natural Resources to enforce Wis.Stat. § 23.42 against plaintiffs by imposing charges on them in connection with the department's review and evaluation of their license applications. The plaintiffs have been advised that the department will seek to enforce § 23.42 against each of them in the future.

The charges that the Department of Natural Resources has sought and will seek to recover include costs incurred in reviewing and evaluating plaintiffs' current or impending applications for new hydroelectric power project licenses from the Federal Energy Regulatory Commission. Before the 1992 amendment to the Federal Power Act, the charges imposed on plaintiffs by the department under § 23.42 were either paid under protest or contested and not paid. Since the 1992 amendments to the Federal Power Act were adopted, plaintiffs have contested the department's charges and most have refused to pay them. Defendant has directed the department to enforce the statute, collected and attempted to collect charges from plaintiffs, threatened legal action for nonpayment of the charges and directed the department to recover additional charges from the plaintiffs pursuant to § 23.42.

## OPINION

 Under the supremacy clause, U.S. Const. art. VI, cl. 2, federal law preempts state law where Congress so intends. In determining Congress's intent, courts must look to the statutory language and federal regulations enacted pursuant to authority granted by the federal statute. *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Courts begin with a presumption against finding preemption of state law. *New York State Dept. of Social Services v. Dublino*, 413 U.S. 405, 413, 93 S.Ct. 2507, 2512–13, 37 L.Ed.2d 688 (1973). *See also Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 132, 98 S.Ct. 2207–2217, 57 L.Ed.2d 91 (1978) ("This Court is

generally reluctant to infer preemption...."). The courts assume that the police powers of the states are not to be superseded by federal legislation unless that is the clear purpose of Congress. *California v. FERC*, 495 U.S. 490, 497, 110 S.Ct. 2024, 2028–29, 109 L.Ed.2d 474 (1990) (quoting *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)). Parties challenging a state's regulatory scheme have the burden of proving facts that would support their claim. *Madison v. Mississippi Medicaid Commission*, 86 F.R.D. 178, 182 (1980).

 Federal law may preempt state law in several ways. First, state law is preempted if Congress indicates in express terms that a federal statute preempts state law. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Second, in the absence of clear language requiring preemption, Congress's intent to preempt state law in a certain area may be inferred when Congress occupies the field by enacting legislation so comprehensive that it leaves no room for supplemental state regulation. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Third, state law may be preempted where the federal interest is so strong that the federal system is assumed to preclude enforcement of state laws on the same subject. *Id.* Fourth, although Congress may not have displaced state regulation in a certain area, state law is preempted to the extent there is an actual conflict between the federal and state law, making compliance with both a "physical impossibility." *Florida Lime & Avocado Growers Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). Finally, conflict preemption applies in situations in which state law poses an obstacle to the accomplishments of congressional objectives. *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Absent a clear showing that one of these situations applies, federal courts must presume that state law is not preempted.

The Federal Power Act does not indicate in express terms that it preempts state statutes pertaining to hydropower projects. The

two types of preemption asserted by the plaintiffs are implicit preemption and preemption by actual conflict.

### A. Implicit Preemption

■ To determine whether the Federal Power Act implicitly preempts Wis.Stat. § 23.42, it is necessary to consider the legislative history of the act, which was enacted "to provide federal control over and give federal encouragement to water power development." *First Iowa Hydro–Elec. Co-op. v. FPC*, 328 U.S. 152, 180 n. 23, 66 S.Ct. 906, 919 n. 23, 90 L.Ed. 1143 (1946). At the time of enactment, in 1935, Congress intended the federal government to play a broad role in regulating the hydroelectric licensing process. *California v. FERC*, 495 U.S. at 496, 110 S.Ct. at 2028. As regards the division of authority between the states and the federal government, the act's legislative history indicates that Congress wanted to prevent "a dual system of futile duplication of two authorities over the same subject matter." *First Iowa*, 328 U.S. at 171, 66 S.Ct. at 915. Congress aimed to preserve state interests while dividing authority over different areas to prevent duplicative federal and state regulation. *Id.* at 174, 66 S.Ct. at 916. For example, § 27 of the statute preserves some state authority over the control, appropriation, use and distribution of water and states:

> Nothing contained in this chapter shall be considered as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses or any vested right acquired therein.

16 U.S.C. § 821.

The United States Supreme Court has interpreted this "savings clause" in two important decisions. In *First Iowa*, 328 U.S. at 152, 163–64, 167, 177, 66 S.Ct. at 906, 911–12, 913, 918, the Court held that although § 9(b), 16 U.S.C. § 802(a)(2) (formerly 16

U.S.C. § 802(b)), of the act required submission to the federal licensing agency of evidence of compliance with certain state laws, it did not require licensees to obtain a state permit or to demonstrate compliance with state law prerequisites to obtaining a permit.[1] Instead, the court interpreted § 9(b) as authorizing the Federal Energy Regulatory Commission to demand evidence only of applicants' compliance with the requirements of the federal permit. Absent a clear mandate from Congress, § 9(b) did not call for compliance with state laws that conflicted with federal requirements or were preempted by them. *California v. FERC*, 495 U.S. at 501, 110 S.Ct. at 2030–31 (citing *First Iowa*, 328 U.S. at 166–67, 66 S.Ct. at 912–913). A state permit requirement would vest in the states a veto power over federally licensed projects that could render the Federal Power Act ineffective. *First Iowa*, 328 U.S. at 164, 66 S.Ct. at 911–12. In making this determination, the Court reasoned that:

> the effect of § 27, in protecting state laws from supersedure, is limited to laws as to the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature. It therefore has primary, if not exclusive, reference to such proprietary rights. The phrase "any vested right acquired therein" further emphasizes the application of the section to property rights. There is nothing in the paragraph to suggest a broader scope unless it be the words "other uses." Those words, however, are confined to rights of the same nature as those relating to the use of water in irrigation or for municipal purposes.

*Id.* 328 U.S. at 175–76, 66 S.Ct. at 917. The Court interpreted § 27's reservation of proprietary rights to the states as reflective of Congress's intent to establish a system of control, dividing federal and state jurisdiction under the Federal Power Act, and noted that "in those fields where rights are not thus

---

1. Section 9(b), 16 U.S.C. § 802(a)(2) (formerly 16 U.S.C. § 802(b)), provides:

 (a) Each applicant for a license under this chapter shall submit to the commission ... (2) Satisfactory evidence that the applicant has complied with the requirements of the laws of the State or States within which the proposed project is to be located with respect to bed and

banks and to the appropriation, diversion, and use of water for power purposes and with respect to the right to engage in the business of developing, transmitting, and distributing power, and in any other business necessary to effect the purposes of a license under this chapter. 16 U.S.C. § 802(a)(2).

'saved' to the states, Congress is willing to let the supersedure of the state laws by federal legislation take its natural course." *Id.*

Cases decided after *First Iowa* consistently supported the position that the Federal Power Act preempts state law except with respect to proprietary rights reserved to the states. For example, in *FPC v. Niagara Mohawk Power Corp.*, 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 666 (1954), the Supreme Court held that the Federal Power Act did not preempt water rights traditionally determined by state law. *Id.* at 252–53, 74 S.Ct. at 494–95. A limited reading of § 27 was reaffirmed in *FPC v. Oregon*, 349 U.S. 435, 75 S.Ct. 832, 99 L.Ed. 1215 (1955), in which the state of Oregon intervened in the Federal Energy Regulatory Commission's licensing process to challenge the suitability of the project's proposed fish conservation facilities. *Id.* at 440, 75 S.Ct. at 835–36. The Supreme Court held that Oregon could not exercise a "veto" by requiring federal power licensees to obtain the state's permission for building power projects. *Id.* at 445, 75 S.Ct. at 838. To grant Oregon such a power "would result in the very duplication of regulatory control precluded by the *First Iowa* decision." *Id.* at 445, 75 S.Ct. at 838.

*First Iowa* was interpreted recently by the United States Supreme Court in *California v. FERC*, 495 U.S. 490, 110 S.Ct. 2024, 109 L.Ed.2d 474, in which the Court held that the California Water Resources Control Board could not impose minimum stream flow requirements under state law that conflicted with minimum stream flow requirements contained in a Federal Energy Regulatory Commission license. *Id.* The Court explained that California's higher minimum stream flow requirements conflicted directly with § 10(a) of the Federal Power Act, which provides that the Federal Energy Regulatory Commission shall set the conditions of the license, including minimum stream flows. *Id.* The Court noted that:

> Allowing California to impose significantly higher minimum stream flow requirements would disturb and conflict with the balance embodied in that considered federal agency determination ... [A]llowing California to impose the challenged requirements would be contrary to Congressional intent regarding the Commission's licensing authority and would "constitute a veto of the project that was approved and licensed by FERC."

*Id.* at 506–07, 110 S.Ct. at 2034 (quoting *California ex rel. State Water Resources Board v. FERC*, 877 F.2d 743, 749 (9th Cir. 1989)).

In holding that the California law conflicted with the Federal Power Act, the Court did not indicate whether its decision was based on conflict preemption analysis, which allows state regulation so long as it does not conflict with the Federal Energy Regulatory Commission licensing decision, or "occupation of the field" analysis, which prohibits all state regulation except that reserved explicitly to the states in the statute. However, the Court of Appeals for the Ninth Circuit has interpreted the decision as holding that the Federal Power Act occupied the field of the hydropower licensing except to the extent that proprietary water rights were at issue. In *Sayles Hydro Associates v. Maughan*, 985 F.2d 451, 456 (9th Cir.1993), the California State Water Resources Control Board would not issue the appellees a permit that would enable them to operate a hydropower project for which the Federal Energy Regulatory Commission had already issued a license until appellees provided several reports and studies to assure that the project satisfied the board's environmental and cost concerns. *Id.* at 453. The court noted that most of the board's concerns had already been addressed by the Federal Energy Regulatory Commission, which had conditioned the license on compliance with certain specified environmental requirements. *Id.* at 456. The court reasoned that there would be no point for Congress to require the Federal Energy Regulatory Commission to consider state agency recommendations in order to make its own decisions about which to accept if state agencies had the power to impose more stringent requirements after the federal license was issued. *Id.* In so holding, the court noted that *California v. FERC* reaffirmed the *First Iowa* holding that the only authority states retain over the licensing of federal hydropower projects pertains to proprietary rights. *Id.* at 455.

The parties concede in their briefs that § 23.42 does not pertain to proprietary rights. However, defendant urges this court to interpret *First Iowa* and *California v. FERC* as holding that "occupy the field" preemption applies only when a state exercises a "veto power" over a federally licensed project by imposing requirements that either prevent a project from operating or that affect matters already being regulated by federal law. Defendant argues that this court should rely on the holding in *Mega Renewables v. County of Shasta*, 644 F.Supp. 491 (E.D.Cal.1986), which involved a preemption challenge to a state law requiring license applicants to notify the state of their intention to divert the natural flow of a river, stream or lake and requiring that no body of water could be diverted until the state first found that diversion would not harm fish or wildlife. *Id.* at 494. The district court held that the California law was not preempted by the Federal Power Act because the law did not grant the state a "veto power" over a proposed project but merely required a procedure for including the state's advice on mitigation of a project's effects on the environment. *Id.* at 497. The court interpreted *First Iowa* as holding that only state requirements intruding into or interfering with the Federal Energy Regulatory Commission's permit authority are preempted by the Federal Power Act. However, in relying on *Mega Renewables*, defendant fails to acknowledge that the Court of Appeals for the Ninth Circuit held in *Sayles*, 985 F.2d 451, that the Federal Power Act occupies the field of hydropower licensing except to the extent that proprietary water rights were at issue. To that extent, *Sayles* overrules the earlier district court opinion in *Mega Renewables*. In addition, the Supreme Court decided *California v. FERC*, 495 U.S. 490, 110 S.Ct. 2024, after *Mega Renewables*. Its decision lends support to the conclusion that the Federal Power Act preempts the field except to the extent that states retain proprietary rights over water.

Although *First Iowa* and *California v. FERC* involved situations in which states intervened in the federal licensing process in an attempt to impose more stringent state requirements or to prohibit the operation of hydropower projects already licensed by the Federal Energy Regulatory Commission, both decisions confirmed the preemptive effect of the Federal Power Act and narrowly interpreted the extent of state authority preserved by § 27. Thus, in *California v. FERC*, 495 U.S. 490, 110 S.Ct. 2024, the Supreme Court explicitly reaffirmed *First Iowa*'s construction of the savings provision "to encompass only laws relating to proprietary rights" and reasoned that, because the California minimum stream flow requirements did not pertain to these rights, *First Iowa*'s holding required preemption of the California law. *Id.* 495 U.S. at 503, 506, 110 S.Ct. at 2031–32—2033–34. Similarly, in *Sayles*, the court of appeals stated that, "Since the Court [in *California v. FERC*] made it clear that the state could control only proprietary rights to water, that established the category as 'occupy the field' preemption for everything but proprietary rights to water." *Sayles*, 985 F.2d at 456.

Even if *First Iowa* and *California v. FERC* are read as holding that "occupy the field" preemption applies only when a state exercises a "veto power" over a federally licensed project, § 23.42 imposes additional requirements on license applicants and vests the state with the kind of "veto power" *First Iowa* and *California v. FERC* prohibit. The legislative intent behind the Federal Power Act is to provide a broad regulatory scheme and prevent duplicative federal and state regulations on the same issue. Thus, license applicants can expect that they will have to comply with any local laws the Federal Power Act reserves to the states, but that they will not be subjected to additional, more stringent state regulations.

Although the Wisconsin statute is directed only to the payment of the cost of studies and apportions the costs of studies among license applicants based on the amount of hydropower a proposed project generates, it adds another requirement and an additional cost to the securing of a license. Having to pay fees to the state to cover the costs of such studies may deter a hydropower company from developing its project in the state of Wisconsin. (There is no statutory limit to the number, scope or cost of the studies the state may undertake.) To that extent, § 23.42 func-

tions as an economic deterrent to license applicants and can be construed as an implicit "veto power" by the state similar to laws requiring applicants to meet more stringent state requirements than those provided by the federal licensing scheme.

There is no question of the importance to the state's residents of Department of Natural Resources's studies on the environmental impact of proposed hydropower projects, or of their importance to the Federal Energy Regulatory Commission, which relies on the studies in making its license determinations. Congress envisioned that hydropower license applicants would bear some of the costs of these studies, as indicated by the 1986 and 1992 amendments to the Federal Power Act, requiring that fees charged to license applicants be used to reimburse states for the costs of environmental studies. 16 U.S.C. §§ 803(e)(1), 823a(e). However, the issue is whether Congress intended that the Federal Energy Regulatory Commission would be responsible for administering the collection of fees from license applicants to cover the costs of studies. Congress made its intent clear when it enacted 16 U.S.C. § 803(e)(1) and § 823a(e), both of which provide explicitly that the Federal Energy Regulatory Commission shall charge licensees fees for the purpose of reimbursing state agencies for costs incurred in conducting studies and reviews. The fact that Wis.Stat. § 23.42 enables the state of Wisconsin to carry out its consulting role pursuant to the Federal Power Act is not a sufficient justification to overlook Congress's intent that the federal government regulate the collection of fees from license applicants. Consequently, because Congress's intent is that the Federal Energy Regulatory Commission monitor the collection of fees from license applicants and because the Federal Power Act implicitly occupies the field of hydropower licensing except with respect to proprietary rights, I conclude

that Wis.Stat. § 23.42 is preempted by the Federal Power Act.

### B. Preemption by Conflict

 There are two ways in which state law may actually conflict with federal law. First, state law conflicts with federal law when it is impossible to comply with both state and federal provisions. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 257, 104 S.Ct. 615, 626, 78 L.Ed.2d 443 (1984). If compliance with both state and federal law is not "physically impossible," there is no actual conflict. *Id.* Second, state law may actually conflict with federal law where state law poses an obstacle to the full purposes and objectives of Congress in passing the legislation at issue. *Id.* at 248, 104 S.Ct. at 621.

 Plaintiffs argue that Wis.Stat. § 23.42 is in direct conflict with the 1986 and 1992 amendments to the Federal Power Act because the federal amendments allow the Federal Energy Regulatory Commission to establish fees to be charged applicants to reimburse state fish and wildlife agencies for the same expenses that Wis.Stat. § 23.42 seeks to recover directly from applicants. The 1986 amendment permits the Federal Energy Regulatory Commission to establish fees to be charged applicants for exemptions from the hydropower licensing process. 16 U.S.C. § 823a(e).[2] The fees are to be used to reimburse state fish and wildlife agencies for expenses incurred by them in the mandatory consultation process with the Federal Energy Regulatory Commission. *Id.* Similarly, the 1992 amendment provides a scheme for reimbursing state agencies for costs incurred in conducting studies that applies to all license applicants and not just those applying for exemptions. The amendment provides:

> (1) That the licensee shall pay to the United States reasonable annual charges in an amount to be fixed by the Commission for the purpose of reimbursing the United

---

2. The 1986 amendment provides:
 (e) Fees for studies
 The Commission ... shall establish fees which shall be paid by an applicant for a license or exemption for a project that is required to meet terms and conditions set by fish and wildlife agencies.... Such fees shall be adequate to reimburse the fish and wildlife agencies ... for any reasonable costs incurred in

connection with any studies or other reviews carried out by such agencies for purposes of compliance with this section. The fees shall, subject to annual appropriations Acts, be transferred to such agencies by the Commission for use solely for purposes of carrying out such studies and shall remain available until expended.

States for the costs of the administration of this subchapter, including any reasonable and necessary costs incurred by Federal and State fish and wildlife agencies and other natural and cultural resource agencies in connection with studies or other review carried out by such agencies for purposes of administering their responsibilities under this subchapter ... *Provided,* That, subject to annual appropriations Acts, the portion of such annual charges imposed by the Commission under this subsection to cover the reasonable and necessary costs of such agencies shall be available to such agencies (in addition to other funds appropriated for such purposes) solely for carrying out such studies and reviews and shall remain available until expended....

16 U.S.C. § 803(e)(1).

Notably, it is not "physically impossible" to comply with both the 1986 amendment and Wis.Stat. § 23.42, because the Wisconsin law specifically provides that any federal reimbursements shall be deducted from the fee charged an applicant. Wis.Stat. § 23.42(3)(d) provides: "The department shall deduct any amount it receives as reimbursement under ... [the 1986 amendment] for reviewing and evaluating an application or notification of intent from the fee it charges an applicant for reviewing that application or notification of intent." § 23.42(3)(d). Consequently, the Wisconsin Department of Natural Resources cannot "double bill" both the federal government and the applicant for preparing its recommendations to the Federal Energy Regulatory Commission.

However, the Wisconsin statute poses an obstacle to the full purposes and objectives of Congress in passing the 1986 and 1992 amendments. The amendments reflect Congress's intent that the reimbursement of state agency expenses incurred in connection with fish and wildlife studies is within the area of federal control covered by the Federal Power Act. For example, the legislative history of the 1992 amendment indicates that Congress intended that the Federal Energy Regulatory Commission would reimburse states for costs incurred in conducting studies:

Subsection (a) of this section addresses a concern of FERC, resource agencies, envi-

ronmentalists, and the hydro industry: That insufficient environmental review due to inadequate study budgets of fish and wildlife agencies will translate into extremely costly relicensing delays over the next several years. It ensures that these environmental review funds will be available, subject to appropriations, by allowing FERC to assess these costs as part of its normal annual fees already assessed under section 10(e) to hydro licensees.

(Emphasis added.) H.Rep. No. 102–474(I), 102nd Cong., 2d Sess. 222 (1992), *reprinted in* 1992 U.S.C.C.A.N. pp. 1953, 2045. The legislative history indicates that Congress intended to reserve for federal control the reimbursement of state agency expenditures incurred during the consultation process. In contrast, the Wisconsin statute permits the Department of Natural Resources to recover the costs directly from prospective licensees. The conflict between Wis.Stat. § 23.42 and the 1986 and 1992 amendments is neither hypothetical nor potential because Wis.Stat. § 23.42 thwarts the objectives of Congress in regulating the reimbursement of state agencies' expenses.

Moreover, both the 1986 and 1992 amendments provide specifically that the fees collected will be used to reimburse state fish and wildlife agencies for "reasonable costs." This is evidence of Congress's intent to have the Federal Energy Regulatory Commission determine what portion of fees charged to hydropower companies should be used to reimburse states based on what the federal agency determines to be "reasonable." Although states may conduct as many studies as they choose and can afford, Congress wanted the federal government to regulate the extent to which license applicants be assessed fees to reimburse states for their reasonable costs.

Defendant argues that the Chair of the Federal Energy Regulatory Commission construes § 803(e)(1) as authorizing legislation that can be implemented only if Congress appropriates funds either in the annual appropriations acts for the agencies that perform the studies or in the appropriation for the Commission. Letter from Elizabeth A. Moler, Chair, Federal Energy Regulatory Commission, to George E. Meyer, Secretary, Wisconsin Department of Natural Resources

(October 20, 1993). Although states are currently not being reimbursed for their costs because Congress has not appropriated funds for that purpose, this does not negate Congress's intent that fee collection and reimbursement fall into an area reserved to the federal government and not the states. Therefore, Wis.Stat. § 23.42 poses an obstacle to the full purposes and objectives of Congress in passing the amendment and is preempted by the Federal Power Act.

## ORDER

IT IS ORDERED that the motion for summary judgment of plaintiffs Wisconsin Valley Improvement Company, Northern States Power Co., Nekoosa Papers Inc., Weyerhaeuser Paper Company, Tomahawk Power & Pulp Company and N.E.W. Hydro, Inc. is GRANTED and the motion for summary judgment of defendant George E. Meyer in his capacity as Secretary of the Wisconsin Department of Natural Resources is DENIED. FURTHER, IT IS ORDERED that Wis.Stat. § 23.42 is declared unconstitutional and defendant George E. Meyer in his capacity as Secretary of the Wisconsin Department of Natural Resources is enjoined permanently from attempting to enforce the statute against plaintiffs. The clerk of court is directed to enter judgment for plaintiffs and close this case.