WILLIAM H. PONELEIT, BUILDING INSPECTOR OF THE CITY OF BRIDGEPORT *v.* JOHN DUDAS ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued June 1—decided July 7, 1954

*Samuel J. Tedesco,* for the appellants (defendants).

*James F. Kenney,* for the appellee (plaintiff).

DALY, J. The defendants have appealed from a judgment enjoining them from using their property in violation of the zoning regulations of the city of Bridgeport. On September 25, 1945, the defendant John Dudas entered into an agreement for the purchase of, and later purchased, a strip of land extending 54.65 feet along the southwesterly side of Seabright Avenue in Bridgeport. The strip was approximately fifteen feet deep as measured to the then high-water mark of Black Rock Harbor. On December 31, 1945, Dudas commenced to fill in along his land in accordance with a permit granted by the harbor master of the city. He ultimately reclaimed land about 225 feet in depth by filling in the harbor. In 1947, he built a house on this land and in 1951 erected a garage. There is now a pier extending from the southeasterly end of the property to a float in the harbor. The defendant Margaret Dudas became a joint owner of the premises on July 11, 1949. Black Rock Harbor is a navigable body of water, where the tide ebbs and flows. The channel is navigated by commercial vessels. The defendants first allowed others to use the reclaimed land and the pier and float in 1946. They are now conducting a boat livery business on the premises. These various activities of the defendants did not in any way interfere with navigation. The zoning map, which is a part of the regulations, shows that the property purchased by Dudas is located in a residence B zone. The reclaimed land is not shown on the map. The city has no local harbor line.

The zoning regulations prohibit business, with exceptions not relevant to this case, in a residence B zone. Bridgeport Zoning Regs., c. 4, § 2 (1949).

Prior to 1949, the waters adjacent to land were not expressly referred to or shown upon the map as being within any zone. The regulations adopted in 1949 provide that unzoned waters bordering upon the city which shall in any part be filled in or upon which any structure shall be erected shall be deemed to bear the zoning classification of the adjacent zoned land. Id., c. 2, § 4. The trial court concluded that the defendants are and have been operating a business upon their land in a residence B zone within the corporate limits of the city of Bridgeport in violation of the zoning regulations, and rendered judgment for the plaintiff.

The defendants moved to open the judgment, claiming that the zoning commission was illegally constituted and that the regulations were not valid and legal. They admitted at the hearing on the motion that the evidence which they claimed supported their contention was known to them and available at the time of trial. The motion was denied. They assign as error the court's denial of their motion to open the judgment and its conclusion that their use of the property was in violation of zoning regulations. Judgment was entered upon September 8, 1953. A new term of the court commenced on September 11, 1953, and the previous one had then expired. The motion was filed on September 16, 1953. The opening or vacating of a judgment during the term at which it is rendered is at the legal discretion of the court. *Ideal Financing Assn.* v. *LaBonte,* 120 Conn. 190, 195, 180 A. 300; *Tyler* v. *Aspinwall,* 73 Conn. 493, 497, 47 A. 755. "It is well settled that, unless proceedings looking to modification of a judgment are started before the expiration of the term of court at which it was entered, a court has no power to modify it in matters of substance, as

distinguished from the correction of clerical errors, after the expiration of the term, except by consent or waiver of the parties or in proceedings for a new trial." *Morici* v. *Jarvie,* 137 Conn. 97, 104, 75 A.2d 47; *Foley* v. *George A. Douglas & Bro., Inc.,* 121 Conn. 377, 379, 185 A. 70; *Ferguson* v. *Sabo,* 115 Conn. 619, 621, 162 A. 844. As the term of court during which the judgment was rendered had expired at the time the motion to open the judgment was filed, the trial court did not have the power to grant it and did not err in denying it.

The defendants contend that the use of their upland is immune from the effect of zoning regulations or any other lawful exercise of the police power by the city so long as it promotes the use of the sea and navigable water. They also claim that the plaintiff in attempting to enforce the zoning regulations, is violating the constitution of this state and the fourteenth amendment to the constitution of the United States. It is true that in *Orange* v. *Resnick,* 94 Conn. 573, 582, 109 A. 864, we said that riparian rights are a franchise which is a property right of which an adjoining upland owner cannot be deprived without the payment of just compensation. That case, however, in no way involved the validity of zoning regulations. It does not go so far as to hold that riparian rights are more immune from control under the police power than other property rights. To the extent that by zoning regulations a municipality may limit the uses to be made of property generally, it may also by zoning regulations limit the exercise of riparian rights. It is well established that the enactment of zoning regulations is the exercise of police power, and so far as they reasonably promote public health, welfare and safety they are constitutional even though their effect is to limit the

exercise by private persons of some of their property rights. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 539, 45 A.2d 828; *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 299, 40 A.2d 177; *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294.

"Regulations may result to some extent, practically in the taking of property, or the restricting its uses, and yet not be deemed confiscatory or unreasonable. Courts will not substitute their judgment for the legislative judgment when these considerations are fairly debatable. They will regard their validity, their necessity and their wisdom from the standpoint of existing conditions and present times. 'And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise.' *Euclid* v. *Ambler Realty Co.* [272 U.S. 365, 387, 47 S. Ct. 114, 71 L. Ed. 303]. Courts will not hold laws, ordinances or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive or confiscatory. They cannot be unmindful at all times that they 'are dealing with one of the most essential powers of government, one that is the least limitable.' *Euclid* v. *Ambler Realty Co.,* supra." *State* v. *Hillman,* supra, 105. "Where the free exercise of one's rights of property is detrimental to the public interest, the State has the right to regulate reasonably such exercise of control under the police power. And that, of course, means, without compensation." *Windsor* v. *Whitney,* 95 Conn. 357, 368, 111 A. 354; *State* v. *Kievman,* 116 Conn. 458, 463, 165 A. 601. " 'Incidental damage to property resulting from gov-

ernmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made.' *State ex rel. Carter* v. *Harper,* 182 Wis. 148, 153, 196 N.W. 451." *State* v. *Hillman,* supra, 104; *State* v. *Heller,* 123 Conn. 492, 497, 196 A. 337. The claims of the defendants that the use of their land is immune from the effect of the zoning regulations and that the plaintiff is acting in violation of the constitution of this state and the fourteenth amendment to the constitution of the United States are without merit.

The defendants further maintain that, even if the zoning regulations do control upland, they can continue to carry on their business on the property as a pre-existing nonconforming use. They assert that the zoning regulations did not mention water or unzoned land until 1949 and that, in the revision of that year, it is stated that a nonconforming use is one that legally existed at the effective date of the regulations, which was April 8, 1949. Bridgeport Zoning Regs., c. 17, § 1 (1949). In this state, the owners of land bounded on a harbor own only to the high-water mark, and whatever rights they have to reclaim the shore are mere franchises. "When however such reclamations are made the reclaimed portions in general become integral parts of the owners' adjoining lands. By means of such reclamations the line of high water mark is changed and carried into the harbor, and the owners' lands have gained the reclaimed shore by accretion; the principles governing the case being the same as those which prevail where the sea recedes gradually by accession of soil to the land." *Lockwood* v. *New York & N. H. R. Co.,* 37 Conn. 387, 391; see *Ladies' Seamen's Friend Society* v. *Halstead,* 58 Conn. 144, 151, 19 A. 658.

The defendants' original upland was increased by the reclaimed land. Their entire property is located within the geographical limits of the city of Bridgeport. *Western Maryland Tidewater R. Co.* v. *Baltimore,* 106 Md. 561, 570, 68 A. 6; 2 McQuillin, Municipal Corporations (3d Ed.) § 7.06. As the defendants' land was enlarged by reclamation, the additions became part of it and were in a residence B zone. The defendants gain nothing by their claim that the regulations did not cover water. The plaintiff has only complained of the defendants' use of their land. The court did not err in rendering judgment enjoining the defendants from continuing the business activities upon their premises contrary to the zoning regulations.

There is no error.

In this opinion the other judges concurred.