## THOMAS HACKETT *v.* J.L.G. PROPERTIES, LLC
## (SC 17871)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued May 17, 2007—officially released February 19, 2008

*Scott R. McCarthy*, for the appellant (substitute plaintiff Kathy Castagnetta).

*Peter C. Hunt*, for the appellee (defendant).

*Ted D. Backer* filed a brief for the Housatonic Valley Council of Elected Officials as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The sole issue in this appeal from a zoning enforcement action is whether the trial court properly rendered judgment in favor of the defendant, J.L.G. Properties, LLC, on the basis of its determination that the zoning regulations of the town of New Milford (town) were preempted by the Federal Power Act (act), 16 U.S.C. § 791a et seq. We affirm the judgment of the trial court.

The relevant facts are undisputed. The defendant owns a commercial marina on the shore of Candlewood

Lake in the town. Candlewood Lake is an artificial pumped storage reservoir. It is owned and operated by Northeast Generation Company (Northeast) and is used to generate hydroelectric power pursuant to a license issued to Northeast by the Federal Energy Regulatory Commission (commission) under the provisions of the act. The property owned by Northeast and licensed for use by the commission includes the property below Candlewood Lake up to 440 feet above sea level. The boundary between the defendant's property and the property owned by Northeast commonly is referred to as the 440 foot contour line. Without first obtaining a zoning or building permit but with a license from Northeast, the defendant began building a sixteen by fifty foot deck off of the marina and on the lake, beneath the 440 foot contour line. Thereafter, the named plaintiff, Thomas Hackett, the town's assistant building official, received complaints from several residential neighbors, who were concerned that the deck was being built without a building permit. Hackett then issued a written order directing that all construction on the deck cease until the defendant obtained a building permit. The defendant halted construction temporarily in order to apply to the town zoning office for the zoning permit it needed to acquire a building permit. The town denied the defendant's application because the project was not in compliance with town setback requirements. The defendant never appealed from the decision and a building permit was never issued for the defendant's project. Nevertheless, the defendant completed construction of the deck without a zoning or building permit.

Thereafter, Hackett[1] brought this action in Superior Court pursuant to General Statutes §§ 8-3 (f)[2] and 8-

---

[1] The action initially was filed by Hackett, however, Kathy Castagnetta, the New Milford zoning enforcement officer, was later substituted for Hackett pursuant to General Statutes § 52-108 and Practice Book § 9-19. References herein to the plaintiff are to Castagnetta.

[2] General Statutes § 8-3 (f) provides: "No building permit or certificate of occupancy shall be issued for a building, use or structure subject to the

12,[3] seeking temporary injunctive relief to prevent the

zoning regulations of a municipality without certification in writing by the official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations. Such official shall inform the applicant for any such certification that such applicant may provide notice of such certification by either (1) publication in a newspaper having substantial circulation in such municipality stating that the certification has been issued, or (2) any other method provided for by local ordinance. Any such notice shall contain (A) a description of the building, use or structure, (B) the location of the building, use or structure, (C) the identity of the applicant, and (D) a statement that an aggrieved person may appeal to the zoning board of appeals in accordance with the provisions of section 8-7."

[3] General Statutes § 8-12 provides: "If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or, when the violation involves grading of land, the removal of earth or soil erosion and sediment control, to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation has been committed or exists, or the agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation or who maintains any building or premises in which any such violation exists, shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the Superior Court shall have jurisdiction of all such offenses, subject to appeal as in other cases. Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within

use of the deck and permanent injunctive relief seeking removal of the deck. The plaintiff; see footnote 1 of this opinion; also sought removal of a lighthouse that the defendant had previously constructed around a flagpole, which was located below the 440 foot contour line, because the defendant had not obtained a zoning or building permit for its construction. In the trial court, the defendant conceded that the deck and lighthouse violated the town's zoning regulations. The defendant asserted, however, that it was not required to obtain a zoning or building permit for these projects because they were built within a federal hydropower project under a license from Northeast. The trial court agreed with the defendant and concluded that the act impliedly preempted the town's zoning regulations and that, as a result, the defendant was not required to comply with local zoning regulations. This appeal followed.[4]

As a threshold matter, we note that the trial court's conclusion that the town's zoning regulations are pre-

ten days after such service, or having been served with a cease and desist order with respect to a violation involving grading of land, removal of earth or soil erosion and sediment control, fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. In any criminal prosecution under this section, the defendant may plead in abatement that such criminal prosecution is based on a zoning ordinance or regulation which is the subject of a civil action wherein one of the issues is the interpretation of such ordinance or regulations, and that the issues in the civil action are such that the prosecution would fail if the civil action results in an interpretation different from that claimed by the state in the criminal prosecution. If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. The court before which such prosecution is pending may order such prosecution abated if it finds that the allegations of the plea are true."

[4] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

empted by the act is a question of law and, therefore, our review is plenary. "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). Thus, where the "issues present questions of law, [they are] subject to our plenary review." *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 786, 739 A.2d 238 (1999).

"The ways in which federal law may pre-empt state law are well established and in the first instance turn on congressional intent. . . . Congress' intent to supplant state authority in a particular field may be express[ed] in the terms of the statute. . . . Absent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the [s]tates to supplement it, if the [a]ct of Congress . . . touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority. . . . Even when Congress has not chosen to occupy a particular field, pre-emption may occur to the extent that state and federal law actually conflict. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility . . . or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . ." (Citations omitted; internal quotation marks omitted.) *Wisconsin Public Intervenor* v. *Mortier*, 501 U.S. 597, 604–605, 111 S. Ct. 2476, 115 L. Ed. 2d 532 (1991).

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. . . . [A]bsent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the [s]tates to supplement federal law . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply with both . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives . . . ." (Internal quotation marks omitted.) *Barbieri* v. *United Technologies Corp.*, 255 Conn. 708, 717, 771 A.2d 915 (2001).

A brief review of the act provides context for our analysis. "The [f]ederal [g]overnment took its greatest step toward exercising its jurisdiction in [the field of hydroelectric power] by authorizing federal licenses, under the Federal Water Power Act of 1920 . . . for terms of [fifty] years for the development of water power in the navigable waters of the United States. [The Federal Water Power] Act was limited in 1921 by the exclusion from it of water power projects in national parks or national monuments . . . [and] it received the name of the Federal Power Act [in 1935 and] . . . was then made [p]art I of Title II of the Public Utility Act of 1935. . . .

"[The act was further] amended . . . so as expressly to require a federal license for every water power project in the navigable waters of the United States. It also made mandatory, instead of discretionary, the filing with the Federal Power Commission of a declaration of intention by anyone intending to construct a project in non-navigable waters over which Congress had jurisdiction under its authority to regulate commerce. It

continued its recital of permission to construct such projects upon compliance with the state laws, rather than with the [act], provided the projects were not in navigable waters of the United States, did not affect the interests of interstate or foreign commerce and did not affect the public lands or reservations of the United States. These amendments sharpened the line between the state and federal jurisdictions and helped to make it clear that the [f]ederal [g]overnment was assuming responsibility through the Federal Power Commission for the granting of appropriate licenses for the development of water power resources in the navigable waters of the United States." (Citations omitted.) *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, 328 U.S. 152, 172 n.17, 66 S. Ct. 906, 90 L. Ed. 1143 (1946). Accordingly, "the [act] . . . establishes a federal licensing and regulatory scheme for water power projects utilizing the navigable waters of the United States or other waters over which Congress has jurisdiction." *Springfield* v. *Environmental Board*, 521 F. Sup. 243, 248 (D. Vt. 1981).

On appeal, the plaintiff claims that the trial court improperly concluded that the town's zoning regulations were preempted by the act. Specifically, the plaintiff asserts that neither field nor conflict preemption applies to the present case and that the construction of the defendant's deck—even though such construction is on property owned by Northeast and subject to federal licensing by the act—must comply with local zoning regulations. The defendant responds that Congress has demonstrated a clear intent to occupy the field of regulating licensed hydroelectric power projects, including recreational development within those projects. We agree with the defendant and conclude that implied field preemption applies to the present case. Accordingly, we conclude that the defendant did not have to comply

with the town's zoning regulations because they are preempted by the act.

In the present case, the trial court concluded that the town's zoning regulations are impliedly preempted by the act and therefore inapplicable to structures within the hydropower project. Specifically, the trial court concluded that: (1) the act demonstrates Congress' intent to occupy the field of hydroelectric power generation; and (2) the town's zoning regulations actually conflict with the congressional purpose of the act because any development along the shore of the lake would violate the fifty foot setback requirement imposed by the town's regulations, contrary to the act's purpose of developing recreational uses within the project. In support of its conclusion, the trial court relied on *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission,* supra, 328 U.S. 152, and *California* v. *Federal Energy Regulatory Commission,* 495 U.S. 490, 110 S. Ct. 2024, 109 L. Ed. 2d 474 (1990).

In *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission,* supra, 328 U.S. 156–57, the petitioner applied to the commission's predecessor, the Federal Power Commission, for a license under the act to construct a power plant on navigable waters in Iowa. The state intervened, claiming that the petitioner's application should be denied because of its failure to comply with state regulations, which required a state permit to construct a dam on state waters. Id., 159, 161. The United States Supreme Court rejected this argument, concluding that such a requirement "would vest in the [state board] a veto power over the federal project . . . [and that] [s]uch a veto power easily could destroy the effectiveness of the [f]ederal [a]ct." Id., 164. The United States Supreme Court further noted that, "[i]n the [act] there is a separation of those subjects which remain under the jurisdiction of the [s]tates from those subjects which the [c]onstitution delegates to the

United States and over which Congress vests the Federal Power Commission with authority to act. . . . The duality [of control] does not require two agencies to share in the final decision of the same issue. Where the [f]ederal [g]overnment supersedes the state government there is no suggestion that the two agencies both shall have final authority. . . . A dual final authority, with a duplicate system of state permits and federal licenses required for each project, would be unworkable. 'Compliance with the requirements' of such a duplicated system of licensing would be nearly as bad. Conformity to both standards would be impossible in some cases and probably difficult in most of them. The solution adopted by Congress, as to what evidence an applicant for a federal license should submit to the Federal Power Commission, appears in § 9 of [the act] . . . [and] permits the [Federal Power] Commission to secure from the applicant '[s]uch additional information as that commission may require.' This enables it to secure, in so far as it deems it material, such parts or all of the information that the respective [s]tates may have prescribed in state statutes as a basis for state action." Id., 167–69.

The United States Supreme Court determined that the act was intended to enact "a complete scheme of national regulation which would promote the comprehensive development of the water resources of the [n]ation, in so far as it was within the reach of the federal power to do so . . . ." Id., 180. The court then concluded that "[t]he detailed provisions of the [a]ct providing for the federal plan of regulation leave no room or need for conflicting state controls." Id., 181.

The court in *First Iowa Hydro-Electric Cooperative* did recognize, however, that state authority is preserved in one area under the act. Id., 175. Section 27 of the act as originally enacted in 1920, now codified at 16 U.S.C. § 821, provides that "[n]othing contained in this

chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective [s]tates relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein." See 41 Stat. 1065, 1077 (1920). In interpreting that section, the court concluded that "[t]he effect of § 27, in protecting state laws from supersedure, is limited to laws as to the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature." *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 175–76.

The United States Supreme Court revisited the federal preemption issue in 1990 in *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 498. In that case, the court considered whether a hydroelectric power project licensed by the commission was required to follow federal or state requirements for water flow into the stream. Id., 494–96. The United States Supreme Court acknowledged that "[i]n the [act] . . . Congress clearly intended a broad federal role in the development and licensing of hydroelectric power. That broad delegation of power to the predecessor of [the commission], however, hardly determines the extent to which Congress intended to have the [f]ederal [g]overnment exercise exclusive powers, or intended to pre-empt concurrent state regulation of matters affecting federally licensed hydroelectric projects. . . . [Resolution of this] issue turns principally on the meaning of § 27 of [the act], which provides the clearest indication of how Congress intended to allocate the regulatory authority of the [s]tates and the [f]ederal [g]overnment." Id., 496–97. Recognizing that this was not an issue of first impression, the United States Supreme Court recalled that in *First Iowa Hydro-Electric Cooperative*, it had "interpreted § 27's reservation of limited powers

to the [s]tates as part of the congressional scheme to divide state from federal jurisdiction over hydroelectric projects, and 'in those fields where rights are not thus "saved" to the [s]tates . . . to let the supersedure of the state laws by federal legislation take its natural course.' " Id., 498, quoting *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 176. The United States Supreme Court "decline[d] . . . to revisit and disturb the understanding of § 27 set forth in *First Iowa* [*Hydro-Electric Cooperative*]." *California* v. *Federal Energy Regulatory Commission*, supra, 498. Finding that California's minimum stream flow requirement did not fall within the narrow reservation of state power provided by § 27, the United States Supreme Court concluded that the act preempted the state regulations regarding stream flow requirements. Id., 498–99, 506–507.

The plaintiff in the present case asserts that the trial court improperly relied on *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 152, and *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 490, because those cases involved claims related to water flow relevant to a hydroelectric power project and that, therefore, those cases are distinguishable from the present case, which involves a recreational use within a hydroelectric power project. We disagree, and conclude that the two cases relied on by the trial court require us to conclude that the town's zoning regulations are preempted in the present case.

The United States Supreme Court's construction of § 27 in *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 152, and *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 490, is not limited to water flow issues, but is instructive on all matters in which states seek to impose requirements on hydroelectric power projects.

Indeed, other courts examining the Supreme Court's interpretation of § 27 repeatedly have recognized its broad application. For instance, the United States District Court for the Eastern District of California concluded that, "[t]he Supreme Court in *First Iowa Hydro-Electric Cooperative* held that the effect of [§] 27 in protecting state laws from supersedure is limited to those regarding the control or use of water in irrigation or for municipal or other uses of the same nature. The [Supreme Court] concluded that § 27 does not save for the states the power to impose project permit requirements." *Mega Renewables* v. *Shasta*, 644 F. Sup. 491, 495 (E.D. Cal. 1986).

Similarly, in *Sayles Hydro Associates* v. *Maughan*, 985 F.2d 451, 456 (9th Cir. 1993), the Ninth Circuit Court of Appeals concluded that the permitting regulations of the California state water resources control board (board) were preempted by the act. In that case, the California state board would not issue a permit to the hydroelectric power project until it met the board's requirements regarding recreation, aesthetics, archaeology, sport fishing, cultural resources, and cost of capital and estimated revenues. Id, 453. The Ninth Circuit recognized that "[t]he Supreme Court has read the broadest possible negative pregnant into this 'savings clause.' . . . The rights reserved to the states in this provision are all the states get." (Citation omitted.) Id. Relying on *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 152, and *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 490, the Ninth Circuit concluded that "the only authority states get over federal power projects relates to allocating proprietary rights in water. *First Iowa Hydro-Electric Cooperative* said that the separation of authority between state and federal governments does not require two agencies to share in the final decision of the same issue." (Internal quotation

marks omitted.) *Sayles Hydro Associates* v. *Maughan*, supra, 455. The Ninth Circuit further concluded that the United States Supreme Court had based its decisions in *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 152, and *California* v. *Federal Energy Regulatory Commission*, supra, 490, on Congress' intent in the act to occupy the field and create a "broad and paramount federal regulatory role . . . ." *Sayles Hydro Associates* v. *Maughan*, supra, 455.

In a case involving a recreational use, the United States District Court for the District of Vermont concluded that the act preempted the permitting requirements of the state of Vermont's environmental protection board, even as it pertained to corollary aspects of the project, such as recreational uses. *Springfield* v. *Environmental Board*, supra, 521 F. Sup. 249. In doing so, the District Court rejected the state environmental protection board's "contention that preemption under the act applies only to state regulation of those aspects of a project directly related to the construction and operation of the hydroelectric generating facility but does not extend to the regulation of corollary aspects . . . ." Id. The District Court concluded that "[t]he [a]ct creates no such dichotomy of project elements," but instead "reflect[s] a clear Congressional intent to bring all aspects of the hydroelectric project within the purview of the federal regulatory scheme." Id.

Other courts also have recognized the inclusion of recreational uses within the purview of the commission's exclusive authority. For instance, in *Coalition for Fair & Equitable Regulation of Docks on Lake of the Ozarks* v. *Federal Energy Regulatory Commission*, 297 F.3d 771, 778 (8th Cir. 2002), the Eighth Circuit Court of Appeals determined that the commission's licensee could assess user fees on docks at a lake that was the site of a hydroelectric power project. The plain-

tiff, a coalition of lake-front property owners, challenged the imposition of the fees, claiming, inter alia, that the commission did not have the power to regulate the use of project lands by anyone other than its licensee. Id., 774. The Eighth Circuit rejected the plaintiff's claim, concluding that the act "commands [the commission] to see to it that projects are developed to serve various public needs, including recreation . . . [and that] Congress gave [the commission] the means to accomplish its tasks through statutory provisions vesting [the commission] with power and discretion." (Citation omitted.) Id., 778.

In the present case, the plaintiff does not claim that the local zoning regulations relate to the proprietary rights that are reserved to state regulation, but instead claims that the act does not preempt the zoning regulations because they are being applied to a recreational use within the hydroelectric power project. We disagree. The commission licensed Northeast to create a hydroelectric power project on Candlewood Lake, and the defendant's deck is located on Northeast property within the hydroelectric power project. As part of its license, Northeast was not only authorized to grant permission to use project property for recreational uses, but was required to develop and submit a recreation plan to the commission. Northeast granted the defendant permission to build the deck pursuant to the authority granted to it under that license. The construction of the defendant's deck, therefore, was within the hydroelectric power project.[5] We agree with the reasoning of the other courts that have considered this issue and conclude that the town's zoning regulations were

[5] The defendant built the lighthouse years prior to building the deck, and there is no evidence in the record indicating whether Northeast ever issued the defendant permission to build the lighthouse. The record does indicate, however, that Northeast did not object to its presence. We conclude, and the parties agree, that the lighthouse should be treated in the same manner as the deck.

preempted because the act demonstrates Congress' intent to create "a complete scheme of national regulation"; *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 180; for all aspects of hydroelectric power projects, including recreational uses within the project.

The plaintiff claims that 18 C.F.R § 2.7 (2007), which governs recreational development at licensed projects, supports its position that the town zoning regulations are not preempted by the act. Section 2.7 provides in relevant part: "The [c]ommission will evaluate the recreational resources of all projects under [f]ederal license or applications therefor and seek, within its authority, the ultimate development of these resources, consistent with the needs of the area to the extent that such development is not inconsistent with the primary purpose of the project. . . . The [c]ommission expects the licensee to assume the following responsibilities . . . (f) (1) [t]o comply with [f]ederal, [s]tate and local regulations for health, sanitation, and public safety, and to cooperate with law enforcement authorities in the development of additional necessary regulations for such purposes. . . ." 18 C.F.R § 2.7 (2007).

The plaintiff asserts that the town's zoning regulations at issue in the present case fall within the "[f]ederal, [s]tate and local regulations for health, sanitation and public safety" enumerated in 18 C.F.R. § 2.7. The plaintiff's cursory argument is based on the principle that the general purpose of zoning regulations includes the protection of public health and safety, and § 2.7 therefore requires compliance with local zoning laws. We do not read that section so broadly.

"According to the [doctrine] of ejusdem generis, unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same

general kind or character as those specifically enumerated. 2A J. Sutherland, Statutory Construction (4th Ed. Sands [1986]) § 47.17." (Internal quotation marks omitted.) *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 455, 627 A.2d 1329 (1993). It is well established that "[w]e . . . construe agency regulations in accordance with accepted rules of statutory construction." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 751, 865 A.2d 428 (2005). The application of this doctrine of construction to 18 C.F.R. § 2.7 does not persuade us that the commission intended to include the town's zoning setback requirements as regulations with which it expects a licensee to comply. The list of regulations enumerated in § 2.7 indicates that the commission was concerned with those that directly address health and sanitation within the recreational use. The regulations at issue are those involving "health, sanitation, and public safety . . . ." 18 C.F.R. § 2.7 (f) (1) (2007). We read the term public safety in the context of health and sanitation, and therefore conclude that only those town regulations directly affecting health and sanitation are included in § 2.7. The town's setback requirements do not fall within the confines of § 2.7.

Moreover, as the United States Supreme Court concluded in *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 168–69, "[w]here the [f]ederal [g]overnment supersedes the state government there is no suggestion that the two agencies both shall have final authority. . . . A dual final authority, with a duplicate system of state permits and federal licenses required for each project, would be unworkable. 'Compliance with the requirements' of such a duplicated system of licensing would be nearly as bad. Conformity to both standards would be impossible in some cases and probably difficult in most of them. The solution adopted by Congress . . . permits the [c]ommission to secure from the applicant '[s]uch

additional information as the commission may require.' This enables it to secure, in so far as it deems it material, such parts or all of the information that the respective [s]tates may have prescribed in state statutes as a basis for state action." As the United States District Court for the District of Vermont recognized, "[t]his does not mean that the [state] has no role in the licensing process. Both the [act] and the [commission regulations] require the presentation of evidence satisfactory to [the commission] showing that the applicant has complied with any of the requirements for a state permit that [the commission] considers appropriate to effect the purposes of the federal license. . . . Moreover, the [a]ct requires that notice of a license application be given to any state or municipality likely to be interested in or affected by the application . . . and [the commission's] rules provide for liberal intervention by interested persons." (Citations omitted.) *Springfield* v. *Environmental Board*, supra, 521 F. Sup. 250. Indeed, as the United States Supreme Court concluded, "the [c]ommission acts on behalf of the people of [the town], as well as others, in seeing to it that the interests of all concerned are adequately protected." *Federal Power Commission* v. *Oregon*, 349 U.S. 435, 449, 75 S. Ct. 832, 99 L. Ed. 1215 (1955). We conclude, therefore, that although 18 C.F.R. § 2.7 (f) (1) allows the commission to consider compliance with local health regulations in evaluating recreational uses within a hydroelectric power project, it does not require that the licensee obtain local zoning and building permits for the development of recreational resources.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and PALMER, Js., concurred.

KATZ, J., concurring. I agree with the majority that the Federal Power Act (act), 16 U.S.C. § 791a et seq.,

preempts the town of New Milford's (town) zoning regulation to preclude the defendant, J.L.G. Properties, LLC, from maintaining the recreational structure (deck) as authorized by Northeast Generation Company (Northeast) on a hydroelectric power project licensed by the Federal Energy Regulatory Commission (commission). I write separately, however, for two reasons. First, I wish to emphasize the anomaly of the broad scope of the preempted field under the act that the majority sets forth, given the well established "presumption against finding pre-emption of state law in areas traditionally regulated by the [s]tates and . . . the assumption that the historic police powers of the [s]tates were not to be superseded by the [f]ederal [a]ct unless that was the clear and manifest purpose of Congress." (Internal quotation marks omitted.) *California* v. *Federal Energy Regulatory Commission*, 495 U.S. 490, 497, 110 S. Ct. 2024, 109 L. Ed. 2d 474 (1990). In this regard, the majority's broad approach to the issue of preemption, if applied uniformly to other federal laws, could be problematic because it could divest Connecticut administrative agencies and courts of jurisdiction over areas that we traditionally have regulated, even when the state law or local regulation[1] at issue is only marginally related to the federal scheme. Cf. *English* v. *General Electric Co.*, 496 U.S. 72, 85, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990) (concluding, in more narrow application of field preemption to another federal act, that "for a state law to fall within the pre-empted zone, it must have some *direct and substantial effect* on the decisions made by those who build or operate nuclear facilities concerning radiological safety levels" [emphasis added]). Second, deciding this case on implied field preemption grounds seems unwise, given the ambiguity in the two seminal

---

[1] "For the purposes of the [s]upremacy [c]lause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws." *Hillsborough County* v. *Automated Medical Labs*, 471 U.S. 707, 713, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985).

Supreme Court cases relied upon by the majority as to whether the court was applying field preemption or conflict preemption. In light of these concerns, I would determine the issue in this case under the narrower ground of conflict preemption. See *State* v. *DeLoreto*, 265 Conn. 145, 170, 827 A.2d 671 (2003) (*Katz, J.*, concurring and dissenting) (court should apply narrower constitutional ground when applicable).

The majority opinion sets forth the facts in some detail. I emphasize the following facts for purposes of this discussion. Pursuant to 16 U.S.C. § 797 (e) of the act, the commission issued a license to the company to generate hydroelectric power on Northeast's property at Candlewood Lake. Northeast thereafter granted permission to the defendant to construct a deck for recreational purposes on a portion of the property encompassing the lake. The deck is located entirely below the "440 foot contour line" or a line demarcating the boundary, above water level, of land used for a federal hydroelectric power project. The town's zoning regulations call for a fifty foot setback from the property line for structures such as the deck. The shore, however, is only approximately ten to twenty feet wide. The defendant never obtained a zoning permit before commencing construction of the deck. The town thereafter denied the defendant's application for a zoning permit and a building permit was never issued.

As always in cases of preemption under the supremacy clause; U.S. Const., art. VI; the ultimate question is whether Congress manifested an intent for federal legislation to preempt state and local law. *Cox Cable Advisory Council* v. *Dept. of Public Utility Control*, 259 Conn. 56, 62, 788 A.2d 29, cert. denied, 537 U.S. 537, 123 S. Ct. 95, 154 L. Ed. 2d 25 (2002). As the majority recognizes, state or local law may be preempted by federal legislation in three ways: expressly; impliedly; or by means of a conflict. *Crosby* v. *National Foreign*

*Trade Council*, 530 U.S. 363, 372–74, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000). If the preemption is express, Congress will make "its intent known through explicit statutory language . . . ." *English* v. *General Electric, Co.*, supra, 496 U.S. 79. "Even without an express provision for preemption, [the Supreme Court has] found that state law must yield to a congressional [a]ct in at least two circumstances. When Congress intends federal law to occupy the field, state law in that area is preempted. . . . And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute. . . . [There is] preemption where it is impossible for a private party to comply with both state and federal law . . . and where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . . What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." (Citations omitted; internal quotation marks omitted.) *Crosby* v. *National Foreign Trade Council*, supra, 372–73.

These categories, however, are not "rigidly distinct." *English* v. *General Electric Co.*, supra, 496 U.S. 79 n.5. Indeed, "[b]ecause a variety of state laws and regulations may conflict with a federal statute, whether because a private party cannot comply with both sets of provisions or because the objectives of the federal statute are frustrated, field pre-emption may be understood as a species of conflict pre-emption . . . ." (Internal quotation marks omitted.) *Crosby* v. *National Foreign Trade Council*, supra, 530 U.S. 372 n.6. Similarly, within a broader preempted field, a particular provision of state law and a particular provision of federal law actually may conflict with each other. See *NE Hub Partners, L.P.* v. *CNG Transmission Corp.*,

239 F.3d 333, 348 (3d Cir. 2001) ("[w]e therefore hold that state regulatory process may be preempted by conflict with federal law, as well as by field occupation").

The text of the pertinent provisions under the act is the starting point for our inquiry.[2] Under the act, Congress vested the commission with the authority to issue licenses for hydroelectric power projects[3] to private entities "for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works . . . ." 16 U.S.C. § 797 (e). In issuing such licenses, however, the commission expressly is required to "give equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife . . . *the protection of recreational opportunities,* and the preservation of other aspects of environmental quality." (Emphasis added.) 16 U.S.C. § 797 (e). Before the commission may issue a license, the applicant must provide "[s]atisfactory evidence that [it] has complied with the requirements of the laws of the [s]tate . . . within which the . . . project is to be located with respect to bed and banks and to the appropriation, diversion, and use of

---

[2] Although the majority does not cite to the act's text in its analysis, in my view, in the absence of clear textual evidence, it seems counterintuitive to suppose that federal law addressing hydroelectric power would preempt a local zoning authority from regulating recreational use of property that in no way impacts hydroelectric power.

[3] The " 'project' " that the commission is charged with regulating broadly is defined as: "complete unit of improvement or development, consisting of a power house, all water conduits, all dams and appurtenant works and structures (including navigation structures) which are a part of said unit, and all storage, diverting, or forebay reservoirs directly connected therewith, the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system, all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way, ditches, dams, reservoirs, lands, or interest in lands the use and occupancy of which are necessary or appropriate in the maintenance and operation of such unit . . . ." 16 U.S.C. § 796 (11).

water for power purposes and with respect to the right to engage in the business of developing, transmitting and distributing power, and in any other business necessary to effect the purposes of a license under this chapter." 16 U.S.C. § 802 (a) (2). As a condition of a license, a licensee is required to develop a "comprehensive plan" for the "adequate protection, mitigation, and enhancement of fish and wildlife (including related spawning grounds and habitat), and *for other beneficial public uses, including* irrigation, flood control, water supply, and recreational and other purposes . . . ." (Emphasis added.) 16 U.S.C. § 803 (a) (1). In determining whether the plan meets those requirements the commission must consider "[t]he recommendations of . . . [s]tate agencies exercising administration over flood control, navigation, irrigation, recreation, cultural and other relevant resources of the [s]tate in which the project is located . . . ."[4] 16 U.S.C. § 803 (a) (2) (B). The act also preserves expressly certain authority to the states in a savings clause: "Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective [s]tates relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein." 16 U.S.C. § 821; see also 16 U.S.C. § 823c (a) (discontinuing commission's authority over small hydroelectric projects in Alaska when Alaska has in

---

[4] "The [commission] may reject a state agency's recommendation as inconsistent with the [act] only after attempting to resolve the inconsistency, giving due weight to the recommendations, expertise and statutory responsibilities of state agencies. 16 U.S.C. § 803 (j) (2). If, after such an attempt, the commission does not adopt a recommendation of a state agency in whole or in part, it must publish findings that adoption of such recommendation is inconsistent with the purpose and requirements of the [act] or other applicable laws and that the conditions selected by the commission comply with the statute's requirements for fish and wildlife protection." *Wisconsin Valley Improvement Co.* v. *Meyer*, 910 F. Sup. 1375, 1378 (W.D. Wis. 1995).

place a plan that, inter alia, protects recreational opportunities).

These provisions speak to a broad role for the commission in determining and evaluating numerous aspects of hydroelectric power projects, including the protection and provision of recreational opportunities. By contrast, the savings clause does not reserve expressly any authority to the states to regulate uses on property owned by hydroelectric power plants. None of these provisions alone, however, expressly addresses whether Congress intended to preempt local zoning regulations. *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 496–97 (although scheme set forth by Congress is quite broad, that "broad delegation of power to the predecessor of [the commission], however, hardly determines the extent to which Congress intended to have the [f]ederal [g]overnment exercise exclusive powers, or intended to pre-empt concurrent state regulation of matters affecting federally licensed hydroelectric projects"). Indeed, there is nothing in the statute that would indicate that the development or "protection" of recreational opportunities could not occur in harmony with local zoning regulations, particularly in view of the directive to consider the recommendations of state agencies exercising administration over recreation.

In answering this question, we do not write on a blank slate. The United States Supreme Court already has interpreted the act and its legislative history in the context of the preemption question. Although I agree with the majority that two cases are of particular significance, in my view, these cases do not require us to decide this question on the grounds of field preemption.

In *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, 328 U.S. 152, 157, 66 S. Ct. 906, 90 L. Ed. 1143 (1946), the plaintiff challenged the decision

of the commission's predecessor, the Federal Power Commission, dismissing the plaintiff's application for a license to build an earthen dam, a reservoir and a diversion canal to a power plant that would have created two additional reservoirs. The Federal Power Commission had dismissed the application on the ground that the plaintiff failed to submit evidence of its compliance with Iowa law requiring a permit from the state's executive council to build the dam. Id., 163. The Iowa law specifically required the executive council to consider certain aspects of the "construction, operation, or maintenance" of the project in granting a permit—particularly those relating to diversion of water within the state. Id., 165–66.

In construing the act, the court applied a mixture of field and conflict preemption principles. Id., 167–76. It determined that the act had created a dual system of authority between the federal government and the states, but permitted no concurrent authority in any area. Id., 167–68. Because the court concluded that the federal government has exclusive authority over licensing hydroelectric power projects, it determined that requirements of Iowa law could not act as a condition precedent to a federal permit unless the federal government expressly added those specific requirements to federal statutes or regulations. Otherwise, such a condition precedent could permit the state to veto a federal project and thereby conflict with federal requirements.[5]

---

[5] In the present case, the parties and the majority focus on the commission's regulation at 18 C.F.R. § 2.7 (2007), which provides in relevant part: "The [c]ommission will evaluate the recreational resources of all projects . . . and seek . . . the ultimate development of these resources . . . . The [c]ommission expects the licensee to assume the following responsibilities . . .

"(e) To cooperate with local, [s]tate, and [f]ederal [g]overnment agencies in planning, providing, operating, and maintaining facilities for recreational use of public lands administered by those agencies adjacent to the project area.

"(f) (1) To comply with [f]ederal, [s]tate and local regulations for health, sanitation, and public safety, and to cooperate with law enforcement authori-

Id., 164, 166–67. The court dismissed reliance on the act's reference to the applicant's submission of information regarding compliance with state laws under 16 U.S.C. § 802: "It does not itself require compliance with any state laws. Its reference to state laws is by way of suggestion to the Federal Power Commission of subjects as to which [it] may wish some proof submitted to it of the applicant's progress." Id., 177–78.

The court went on to conclude, however, that the act left to the states their "traditional jurisdiction . . . ." Id., 171. It noted that the act included a savings clause; 16 U.S.C. § 821; which serves as the *"primary, if not exclusive reference"* to state proprietary rights over the "control, appropriation, use or distribution of water [used] in irrigation or for municipal or other uses . . . ." (Emphasis added.) *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 175–76. "[The savings clause] strengthens the argument that, in those fields where rights are not thus 'saved' to the [s]tates, Congress is willing to let the supersedure of the state laws by federal legislation take its natural course." Id., 176. In light of these statements, it seems unclear whether the savings clause is the exclusive or merely primary measure of state authority under the act, or whether the other questions of preemption unrelated to such proprietary rights would be left to another case.

The Supreme Court again took up the issue of preemption under the act in *California* v. *Federal Energy*

ties in the development of additional necessary regulations for such purposes. . . ."

Because this regulation does not prescribe the specific requirements under the town's zoning regulation, it would seem to present a similar situation to that in *First Iowa Hydro-Electric Cooperative* in that, although state and local laws may be relevant to a determination of the commission, they cannot be a vehicle through which the state could, in effect, veto a federal decision as to some aspect of a hydroelectric power project, nor may they be permitted to supplant federal law and regulations in the event of a conflict.

*Regulatory Commission,* supra, 495 U.S. 493. Therein, the Supreme Court considered conflicting state and federal requirements for minimum stream flow requirements for the maintenance of fish associated with a stream located near a hydroelectric power project. The court again focused on the savings clause but indicated that it would not be inclined to interpret the clause as narrowly were it not bound by prior precedent: "Were this a case of first impression, [the plaintiff's] argument based on the statute's language could be said to present a close question. As [the plaintiff] argues, California's minimum stream flow requirement might plausibly be thought to relat[e] to the control, appropriation, use, or distribution of water used . . . for . . . other uses, namely the generation of power or the protection of fish. This interpretation would accord with the presumption against finding pre-emption of state law in areas traditionally regulated by the [s]tates and with the assumption that the historic police powers of the [s]tates were not to be superseded by the [f]ederal [a]ct unless that was the clear and manifest purpose of Congress." (Internal quotation marks omitted.) Id., 497. The court then went on to say, however, that it was not free to abandon its precedent and therefore declined to revisit the narrow interpretation it had given to the savings clause in *First Iowa Hydro-Electric Cooperative.* California's requirements for minimum stream flow did not fit within that narrow scope.[6] Id., 498–99. In language that appears to conflate conflict and field preemption, it concluded: "[T]he California requirements for minimum instream flows cannot be given

---

[6] Specifically, the court concluded that *First Iowa Hydro-Electric Cooperative* had limited the savings clause to issues of "control, appropriation, use or distribution of water in irrigation or for municipal or other uses *of the same nature.*" (Emphasis in original.) *California* v. *Federal Energy Regulatory Commission,* supra, 495 U.S. 498. Thus, if the state law did not fit within the savings clause, and it conflicted with the federal requirements, it could not stand. See id., 498, 506–507.

effect and allowed to supplement the federal flow requirements. A state measure is pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. . . . Allowing California to impose significantly higher minimum stream flow requirements would disturb and conflict with the balance embodied in that considered federal agency determination." (Citations omitted; internal quotation marks omitted.) Id., 506.

As the majority notes, on the basis of these cases, some federal courts have interpreted the impliedly preempted field under the act broadly, determining all aspects of the project to fall within the preempted field, except those expressly reserved to the states in the savings clause. See, e.g., *Sayles Hydro Associates* v. *Maughan*, 985 F.2d 451, 455–56 (9th Cir. 1993); *Springfield* v. *Environmental Board*, 521 F. Sup. 243, 248–49 (D. Vt. 1981). As the Supreme Court recognized in *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 497, however, this interpretation can be at odds with the assumption under preemption jurisprudence that, in areas traditionally left to the states, Congress must manifest a clear intent to preempt state law; a presumption that the Supreme Court and this court have applied in other cases. See, e.g., *Bates* v. *Dow Agrosciences, LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005) ("[b]ecause the [s]tates are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly preempt state-law causes of action" [internal quotation marks omitted]); *Serrano* v. *Serrano*, 213 Conn. 1, 6, 566 A.2d 413 (1989) ("[t]he United States Supreme Court has repeatedly held that, because the field of domestic relations has traditionally been regulated by the states,

the standard for demonstrating a preempting conflict between federal law and a state domestic relations provision is high"); *Times Mirror Co.* v. *Division of Public Utility Control*, 192 Conn. 506, 512, 473 A.2d 768 (1984) ("[c]ourts should not readily infer that Congress has deprived states of the power to act on interests deeply rooted in local feeling and responsibility which only peripherally concern an area controlled by nonconflicting federal legislation" [internal quotation marks omitted]). Therefore, to the extent that the majority has endorsed the conclusion of other federal courts that "the act demonstrates Congress' intent to create a complete scheme of national regulation . . . for all aspects of hydroelectric power projects, including recreational uses within the project"; (citation omitted; internal quotation marks omitted); that conclusion, absent a clear manifestation of such intent by Congress, should be understood as an anomaly in preemption jurisprudence because of its inconsistency with the presumption that preserves the traditional authority and historic police power of the states. *Poneleit* v. *Dudas*, 141 Conn. 413, 417, 106 A.2d 479 (1954) ("[i]t is well established that the enactment of zoning regulations is the exercise of police power").

In view of this inconsistency, I am disinclined to make such a sweeping determination about the boundaries of the preempted field, particularly when there is a real question about whether the Supreme Court has explicitly determined the field to be so broad. Both *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission*, supra, 328 U.S. 152, and *California* v. *Federal Energy Regulatory Commission*, supra, 495 U.S. 490, dealt with circumstances wherein the federal and state requirements actually conflicted. Both cases involved state requirements that dealt in a direct way with the construction and operation of a hydroelectric power project. Although I acknowledge that a few other

courts have interpreted these decisions as setting forth a broad preempted field; see, e.g., *Sayles Hydro Associates* v. *Maughan, supra,* 985 F.2d 455–56; other courts raise the question of whether, in the absence of a conflict, more peripheral local legislation, such as zoning regulations applicable to dry land within territory licensed by the commission, would be preempted. See *Wisconsin Valley Improvement Co.* v. *Meyer,* 910 F. Sup. 1375, 1382 (W.D. Wis. 1995) (noting that *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission, supra,* 152, and *California* v. *Federal Energy Regulatory Commission, supra,* 490, might be read to hold that field preemption applies only when state exercises veto power over federal project, but ultimately concluding that, either way, state statute at issue was preempted); *Amador* v. *El Dorado County Water Agency,* 76 Cal. App. 4th 931, 959, 91 Cal. Rptr. 2d 66 (1999) ("*California* v. [*Federal Energy Regulatory Commission, supra,* 490] did not clearly indicate whether [court's] decision was based on an 'occupy the field' or 'conflict' theory of preemption"). Given the facts in the present case, we need not resolve this ambiguity.

In the present case, the disputed zoning regulation requires a fifty foot setback from the property line. The shore of the lake is at most twenty feet wide. Thus, as the trial court concluded, it would be impossible to build the deck as authorized by a federal license and still comply with the local zoning regulation.[7] See *Crosby* v.

---

[7] As the amicus curiae point out, "the defendant's 'deck' is not one of the 'recreational enhancements' to be provided by [the] [l]icensee as set forth in the license to [Northeast] from [the commission]." Even if we were to assume that the company was not acting on authority conferred by the commission, however, under these circumstances the commission would have no option to approve the deck because it would be impossible to comply with any such approval of the commission and the local regulation. Much like in *First Iowa Hydro-Electric Cooperative* v. *Federal Power Commission, supra,* 328 U.S. 164, wherein the plaintiff had not submitted evidence of compliance with Iowa law, requiring evidence of actual compliance with the state law "would vest in the [state] a veto power over the federal project."

*National Foreign Trade Council,* supra, 530 U.S. 372 (state law may be preempted when "it is impossible for a private party to comply with both state and federal law"). Thus, I would let the result in the present case rest on this narrower ground of conflict preemption and save the question of the breadth of the field for another day.

Accordingly, I respectfully concur.