******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER BALLOLI *v.* NEW HAVEN POLICE
DEPARTMENT ET AL.
(SC 19584)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Robinson and
Vertefeuille, Js.*

*Argued October 21—officially released, December 27, 2016*

*Andrew J. Morrissey*, with whom was *David J. Morrissey*, for the appellant (plaintiff).

*Jason M. Dodge*, with whom, on the brief, was *Kath-*

*erine E. Abel,* for the appellees (defendants).

*Opinion*

EVELEIGH, J. The sole issue in this appeal is whether the plaintiff, Peter Balloli, who was employed by the named defendant, the New Haven Police Department,[1] had departed his "place of abode" when he was injured, thus entitling him to workers' compensation benefits pursuant to General Statutes § 31-275 (1) (A) (i) of the Workers' Compensation Act (act).[2] The plaintiff appeals[3] from a decision of the Workers' Compensation Review Board (board), which affirmed the decision of the Workers' Compensation Commissioner for the Third District (commissioner) dismissing the plaintiff's claim. On appeal, the plaintiff claims that he is entitled to workers' compensation benefits because he had departed his "place of abode" for duty as a police officer. We agree with the plaintiff.

The following facts, as found by the commissioner, and procedural history are relevant to the disposition of this appeal. The plaintiff was employed by the defendant as a police officer on October 25, 2012. The plaintiff was scheduled to perform an extra duty job as a police officer for the defendant beginning at 7 a.m. on that date.

The plaintiff moved his vehicle out of his driveway at approximately 5:30 a.m. on that morning so that his son could move another vehicle out of the driveway. After moving his vehicle, the plaintiff parked it in the street directly in front of his house. The vehicle was parked so that the passenger side of the vehicle was facing the house and the driver's side of the vehicle was facing the street. After parking his vehicle on the street, the plaintiff went back into his home and finished getting ready for work.

At approximately 6 a.m., the plaintiff walked through his breezeway, down the driveway and to the driver's side door of his vehicle, which was still parked on the street. While standing on the street at the driver's side door, the plaintiff dropped his keys. The keys ricocheted off his foot and landed underneath his vehicle. The plaintiff squatted down and twisted to pick up his keys, injuring his lumbar spine.

The commissioner dismissed the plaintiff's claim, concluding that "[b]ased on the totality of the evidence submitted . . . the [plaintiff had] not met his burden [of demonstrating] that the . . . injury arose out of and in the course of his employment as he was injured at home prior to commencing his normal commute to work. He had not departed from his 'place of abode' pursuant to . . . § 31-275 (1) (A) (i) at the time he sustained his back injury and therefore this incident is not compensable." The plaintiff appealed to the board, which affirmed the decision of the commissioner. This appeal followed.

"As a threshold matter, we set forth the standard of

review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 30, 144 A.3d 420 (2016).

In the present case, the plaintiff does not challenge the factual findings of the commissioner, but instead asserts that the board improperly affirmed the commissioner's incorrect interpretation of the term "place of abode" in § 31-275 (1) (A) (i). Accordingly, the plaintiff's claim raises an issue of statutory construction. "When interpreting the statutory provisions at issue in the present case, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, 299 Conn. 265, 277, 8 A.3d 1093 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter

. . . ." (Footnote omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 784–85, 941 A.2d 932 (2008).

Furthermore, "[i]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 550–51, 108 A.3d 1110 (2015).

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed [1] arose out of the employment and [2] occurred in the course of the employment. . . . [E]mployment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable. . . . For a police officer or firefighter, [however] in the course of his employment encompasses such individual's departure from such individual's place of abode to duty . . . ." (Citation omitted; internal quotation marks omitted.) *McMorris* v. *New Haven Police Dept.*, 156 Conn. App. 822, 830, 115 A.3d 491, cert. denied, 317 Conn. 911, 115 A.3d 1106 (2015).

The plaintiff's claim, therefore, requires us to determine the meaning of "place of abode" as used in § 31-275 (1) (A) (i). Section 31-275 (1) (A) (i) provides as follows: "For a police officer or firefighter, 'in the course of his employment' encompasses such individual's departure from such individual's place of abode to duty, such individual's duty, and the return to such individual's place of abode after duty . . . ." Section 31-275 (1) (A) (i) does not define the term "place of abode" and this court has never had an opportunity to address the meaning of that term.

Both the plaintiff and the defendant rely on the Appellate Court's interpretation of § 31-275 (1) (A) (i) in *Perun* v. *Danbury*, 143 Conn. App. 313, 67 A.3d 1018 (2013), to support their positions in the present case. Specifically, the defendant asserts that the Appellate Court adopted a broad definition of the term " 'place of abode' " in *Perun*, and that the broad definition would include the area on the public street in front of the plaintiff's house in the present case. On the other hand,

the plaintiff asserts that, unlike the plaintiff in *Perun*, he had crossed the demarcation line of his abode when he entered the public street in front of his house.

In *Perun*, the plaintiff, a police officer, slipped and fell on a patch of ice in his driveway as he approached his vehicle to depart for work. *Perun* v. *Danbury*, supra, 143 Conn. App. 314. The commissioner granted the plaintiff's claim, finding that the injury occurred during his departure to work. The board reversed the commissioner's decision, relying on § 31-275 (1) (E) and (F). Id., 315. The board concluded that the plaintiff's injury did not arise out of and in the scope of his employment, and was not compensable under § 31-275 (1) (E) (i) because the injury occurred at the plaintiff's place of abode. Id. The Appellate Court affirmed the board's dismissal, reasoning that "[§] 31-275 (1) (E) and (F) articulate at what point a police officer's or firefighter's course of employment commences and terminates. Section 31-275 (1) (E) provides in relevant part that '[a] personal injury shall not be deemed to arise out of the employment if the injury is sustained . . . [a]t the employee's place of abode, and . . . while the employee is engaged in a preliminary act or acts in preparation for work unless such act or acts are undertaken at the express direction or request of the employer.' What constitutes one's 'place of abode' is defined in § 31-275 (1) (F), and it 'includes the inside of the residential structure, the garage, the common hallways, stairways, driveways, walkways and the yard . . . .' " (Emphasis omitted; footnote omitted.) *Perun* v. *Danbury*, supra, 317. The Appellate Court further reasoned that "[r]eading § 31-275 (1) as a whole, we hold that a police officer's or firefighter's commute to and from work is part of his or her 'course of employment.' The commute, however, according to the legislature, does not begin when the police officer or firefighter breaks the plane of his front door: an injury occurring in a driveway does not occur in the course of employment. In other words, police officers do enjoy so-called 'portal-to-portal coverage' under the workers' compensation statutes . . . but, [the plaintiff] had not crossed the demarcation line as defined by the legislature when he sustained his injury." (Citation omitted.) Id.

Although we are not bound by the Appellate Court's interpretation of § 31-275 (1) (A) (i), we find that it is instructive. In interpreting § 31-275 (1) (A) (i), consistent with § 1-2z, the Appellate Court looked to other relevant statutory provisions—namely § 31-275 (1) (E) and (F). We agree with this approach. As the Appellate Court has explained, "[§] 31-275 (1) (E) and (F) articulate at what point a police officer's or firefighter's course of employment commences and terminates." *Perun* v. *Danbury*, supra, 143 Conn. App. 317.

First, § 31-275 (1) (E) delineates at what point a police

officer's departure from his place of abode begins. Section 31-275 (1) (E) provides that "A personal injury shall not be deemed to arise out of the employment if the injury is sustained: (i) At the employee's place of abode, and (ii) while the employee is engaged in a preliminary act or acts in preparation for work unless such act or acts are undertaken at the express direction or request of the employer . . . ." Section 31-275 (1) (E) is "two-pronged and injuries are not compensable only if both prongs of the statute are met." *McMorris* v. *New Haven Police Dept.*, supra, 156 Conn. App. 831. In other words, a police officer or firefighter must be both engaged in a preliminary act or acts in preparation for work that is not undertaken at the express direction or request of the employer and must be at his or her place of abode in order for the injury to not be compensable.

Second, § 31-275 (1) (F) provides the definition of "place of abode" to be used in § 31-275 (1) (E). Section 31-275 (1) (F) provides as follows: "For purposes of subparagraph (E) of this subdivision, 'place of abode' includes the inside of the residential structure, the garage, the common hallways, stairways, driveways, walkways and the yard . . . ." Section 31-275 (1) (F) does not purport to provide an exhaustive list of the areas that will be considered in "place of abode," but instead provides examples of those items that will be "include[d]" in the term.

"According to the [doctrine] of ejusdem generis, unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated. 2A J. Sutherland, Statutory Construction (4th Ed. Sands [1986]) § 47.17." (Internal quotation marks omitted.) *Hackett* v. *J.L.G. Properties, LLC*, 285 Conn. 498, 513–14, 940 A.2d 769 (2008). In § 31-275 (1) (F), the legislature has provided examples in an effort to help define the term "place of abode." This list indicates that the legislature intended to include areas related to where an individual resides, such as walkways, breezeways, yards, and driveways. Notably, this list does not include public areas that may be adjacent to a person's property, such as sidewalks or streets. Accordingly, we read the term "place of abode" in this context to mean those areas that are related to where an individual resides.

"When determining the legislature's intended meaning of a statutory word, it also is appropriate to consider the surrounding words pursuant to the canon of construction noscitur a sociis.[4] *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 159, 12 A.3d 948 (2011). By using this interpretive aid, the meaning of a statutory word may be indicated, controlled or made clear by the words with which it is associated in the statute. *State* v. *Roque*, 190 Conn. 143, 152, 460 A.2d 26 (1983)."

(Footnote in original.) *State* v. *LaFleur*, 307 Conn. 115, 133, 51 A.3d 1048 (2012). In § 31-275 (1) (F), the legislature chose to use the phrase "place of abode" in concert with numerous terms associated with areas related to where an individual resides—the inside of the residential structure, the garage, the common hallways, stairways, driveways, walkways and the yard. Therefore, the legislature's use of the term "place of abode" in connection with areas that are related to where an individual resides is further indication that the legislature intended "place of abode" to be private areas related to where an individual resides, not public property.[5]

The defendant asserts that the legislature's use of the term "includes" in § 31-275 (1) (F) demonstrates an intent to have a broad definition of "place of abode," which encompasses areas beyond one's property. We disagree. Although we agree that the term "includes" indicates that the legislature was only providing examples of areas that are considered within one's "place of abode," we cannot conclude that the legislature's use of "includes" demonstrates an intention to encompass public areas unrelated to where an individual resides to be within the definition of "place of abode." To the contrary, all of the examples provided by the legislature are areas within the confines of one's property. Therefore, it is consistent with our interpretation that the legislature may have intended to include areas such as a deck or patio within the definition of "place of abode," but we cannot conclude that the legislature intended to make the definition so broad as to include public areas. Keeping in mind the remedial nature of the act and our obligation to construe it in favor of injured employees, we conclude that construing "place of abode" broadly so as to include a public street would incorrectly limit the operation of the statute and frustrate the remedial purpose of the act.

The dissent asserts that "[t]he scope of § 31-275 (1) (A) (i) must be read expansively enough to accommodate [the realities of employees' varied] circumstances to the extent as is consistent with the purpose of the coming and going exception." Although we agree that § 31-275 (1) (A) (i) must be read so as to further the purpose of the coming and going exception, we disagree that the broad construction proposed by the dissent accomplishes that purpose. It has been recognized that "[t]he extension of workers' compensation benefits to periods when police and firefighters are going to or coming home from work makes sense since by the very nature of their work, these public servants are always on duty serving and protecting the community." R Carter et al., 19 Connecticut Practice Series: Workers' Compensation (2008) § 6:14, p. 199. Instead of accomplishing the purpose of the act and the coming and going exception—namely, providing extra coverage for police officers and firefighters—the dissent's proposed

construction of the statute expands the statute so far that it frustrates the purpose of the act and severely limits coverage. The dissent asserts that "[t]he plaintiff's place of abode extended to the street where his vehicle was parked. Such a construction sensibly treats employees similarly irrespective of where they park their vehicles—in their driveways, on the street, or in a garage across the street." We disagree that the statute calls for such a broad construction of the term "place of abode." Even if we were to agree with the dissent that the point at which the employee commences his commute is determinative, which we do not, it still would be appropriate to make the residential areas the proper line of demarcation to make that assessment. In doing so, employees would be treated consistently irrespective of whether they drive their own car, use public transportation, walk, or use some combination of modes of transport. Such a broad construction of the term unduly limits the coverage of the statute. Furthermore, not only does this interpretation frustrate the purpose of the statute and our mandate to interpret it so as to confer coverage on an injured employee, it ignores the other language of the statute.

It is important to our construction of § 31-275 (1) (A) (i) that we recognize that the statute provides that "[f]or a police officer or firefighter, 'in the course of his employment' *encompasses such individual's departure from such individual's place of abode to duty*, such individual's duty, and the return to such individual's place of abode after duty . . . ." (Emphasis added.) Section 31-275 (1) (A) (i) does not define the term "departure." Accordingly, pursuant to § 1-2z, we look to the dictionary definition of the term. The term "departure" is defined with substantial similarity in numerous dictionaries. Webster's Third New International Dictionary (2002) defines "departure" as, inter alia, "separation . . . removal from a place . . . act of going away . . . a setting out [as on a journey] . . . ." The American Heritage College Dictionary (4th Ed. 2007) similarly defines "departure" as, inter alia, "[t]he act of leaving . . . a starting out, as on a trip . . . ." On the basis of these definitions of departure, we conclude that fact that the plaintiff in the present case had entered the public thoroughfare on his way to duty is sufficient to establish that he was covered. It was not necessary for the plaintiff to demonstrate that he had entered his vehicle or started his engine, or otherwise "begun" his commute. The fact that the plaintiff had left his driveway and entered the public thoroughfare is sufficient to establish coverage, even if he then planned to enter a vehicle and continue to duty by way of a vehicle.

The plaintiff asserts that the reading of § 31-275 (1) (A) (i) urged by the defendant and adopted by the dissent would lead to absurd and unworkable results. We agree. Specifically, the plaintiff asserts that if he happened to live in New Haven and walk to work, there

would be no dispute that from the moment he left the boundary of his property and entered out onto the public street, any injury would be " '[within] the course of his employment' " under § 31-275 (1) (A) (i). Specifically, the plaintiff asserts that if he were walking to work and dropped his keys on the street in the same relative location as he did in the present case, his injury would be compensable. The plaintiff claims that such an interpretation of § 31-275 (1) (A) (i) is unworkable because he would be treated differently because he drives to work and had not entered his vehicle, despite the fact that he had entered the public road. We agree and conclude that, based on the plain language of § 31-275 (1) (A) (i), "place of abode" does not include the public street.

Furthermore, this court's prior interpretation of other statutes is consistent with our conclusion that the term "place of abode" should not be interpreted so broadly as to include a public street. For instance, in *State* v. *Sealy*, 208 Conn. 689, 692–93, 546 A.2d 271 (1988), this court interpreted General Statutes (Rev. to 1985) § 53-206 (a), which provided in relevant part as follows: "Any person who carries upon his person any . . . knife the edged portion of the blade of which is four inches or over in length . . . unless such person has been granted a written permit . . . authorizing such person to carry such weapon . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . . The provisions of this subsection shall not apply to . . . any person who is found with any such weapon or implement concealed upon his person while lawfully removing his household goods or effects from one place to another, or from one residence to another, nor to any person while actually and peaceably engaged in carrying any such weapon or implement from his place of abode or business to a place or person where or by whom such weapon or implement is to be repaired, or while actually and peaceably returning to his place of abode or business with such weapon or implement after the same has been repaired." In *Sealy*, this court concluded that "[i]mplicit in this provision is an exception for carrying a weapon in an individual's residence or abode, and a recognition of the protected zone of privacy in his or her dwelling." *State* v. *Sealy*, supra, 693. Nevertheless, this court upheld the conviction of the defendant in that case of carrying a dangerous weapon in violation of § 53-206 arising from his possession of a butcher knife with a blade that was four and one-half inches long in the common hallway of a small apartment building in which he resided. Id., 690–91.

In *Sealy*, the defendant claimed that "he had exclusive control over the landing and stairway between the second and third floor apartments . . . [and] that his exclusive use and control over this area rendered the landing and stairway part of his residence and, there-

fore, his carrying a weapon in this area was exempt
. . . ." (Footnote omitted.) Id., 693. In analyzing his
claim, this court recognized that "[t]he success of this
claim turns upon whether a common stairway and land-
ing is part of a residence or abode." Id.

In rejecting the defendant's claim in that case, this
court reasoned as follows: "[T]he defendant did not
have the exclusive use of the area between the second
and third floor apartments, as he did not have the legal
right to control access and to exclude others. At any
time there might be [delivery persons], the landlord,
his or her agents, visitors, or residents of the other
apartment in that common hallway and the defendant
could not lawfully have excluded them from the prem-
ises. In other words, although the defendant may have
been the principal user of the third floor landing and
stairway, other individuals, however infrequent their
use, also had a right to use that area. . . . This being
the case, we conclude that the stairway and landing
which led to the defendant's apartment were not part
of his residence or abode." (Citation omitted; footnote
omitted.) Id., 694.

Similarly, our construction of § 31-275 (1) (A) (i) in
the present case is consistent with this court's construc-
tion of the term "place of abode" for purposes of service
of civil process. For instance, in *Clover* v. *Urban*, 108
Conn. 13, 14–16, 142 A. 389 (1928), this court addressed
whether the plaintiff could receive injunctive relief pre-
venting enforcement of a judgment rendered against
him when service of process in the underlying action
was left " 'in the outer hall of a house occupied by two
tenants' " under the general rule that service of civil
process may be made at a defendant's usual place of
abode. This court explained that "[i]n a sense it is of
course true that [the plaintiff] had his 'usual place of
abode' in Waterbury and in the apartment house in
question, but it is manifest that leaving a copy of process
anywhere in Waterbury or anywhere in the apartment
house, would be insufficient. . . . [S]ervice should
have been made at the apartment occupied by [the
plaintiff]. This did not include the outer hall used by
the other tenant in connection with his apartment and
occasionally used by [the plaintiff], any more than it
included the walk from the street to the house, or the
yard which the tenants used in common. In legal view,
the apartments in a house of this character are as sepa-
rate and distinct as though under separate roofs. [The
plaintiff's] place of abode was as much a separate and
distinct habitation as though in a building by itself.
The outer hall was merely a passageway for his use in
common with other tenants, and his place of abode
was not reached from the street until one came to the
door which led into his own apartment. The door of
the apartment of each tenant is his outer door. . . .
Leaving the copy of the process in the outer hall was
much the same, and it failed as completely as if it had

been left on the common sidewalk or in the common yard." (Citations omitted.) Id., 16–17.

As the foregoing demonstrates, when this court has interpreted the meaning of the term "place of abode" in other statutory contexts, it has confined its interpretation to areas that relate to where the person actually resides and has not extended its interpretation to a public street. Accordingly, these prior interpretations of "place of abode" in other contexts, further bolster our interpretation of the term in § 31-275 (1) (A) (i) so as not to include the public street.

In the present case, the plaintiff crossed the boundary of his property and entered the public street while on his way to work. When he dropped his keys in the street and was injured, he was acting " 'in the course of his employment' " pursuant to the plain language of § 31-275 (1) (A) (i). Accordingly, we conclude that the board should not have affirmed the decision of the commissioner dismissing the plaintiff's claim.

The decision of the Workers' Compensation Review Board is reversed and the case is remanded to the board with direction to reverse the decision of the Workers' Compensation Commissioner and to remand the case to the commissioner for further proceedings.

In this opinion ROGERS, C. J., and PALMER and VERTEFEUILLE, Js., concurred.

* This case was originally argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald and Robinson. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Senior Justice Vertefeuille was added to the panel and has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] We note that Connecticut Interlocal Risk Management Agency, the workers' compensation claims administrator for the New Haven Police Department, is also a defendant in the present case. In the interest of clarity, we refer to the New Haven Police Department as the defendant throughout this opinion.

[2] General Statutes § 31-275 (1) (A) (i) provides: "For a police officer or firefighter, 'in the course of his employment' encompasses such individual's departure from such individual's place of abode to duty, such individual's duty, and the return to such individual's place of abode after duty . . . ."

[3] The plaintiff appealed from the decision of the board to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[4] Noscitur a sociis translates from Latin, "it is known by its associates . . . ." (Citations omitted; internal quotation marks omitted.) *Graham County Soil & Water Conservation District* v. *United States ex rel. Wilson*, 559 U.S. 280, 287, 130 S. Ct. 1396, 176 L. Ed. 2d 225 (2010).

[5] The parties also cite to § 31-275-1 (2) of the Regulations of Connecticut State Agencies, which provides that an " '[e]mployee's place of abode' includes, but is not limited to: (a) House, condominium, or apartment; (b) Inside of residential structures; (c) Garages; (d) Common hallways; (e) Stairways; (f) Driveways; (g) Walkways, or (h) Yards." Because we conclude that § 31-275 (1) (A) (i) is clear and unambiguous, we do not resort to any extratextual sources to determine the meaning of "place of abode" as used in § 31-275 (1) (A) (i). To the extent that the regulations constitute a time-tested interpretation of the board, the terms of the regulation are consistent with the terms used in the statute itself and our interpretation to include privately owned areas within the confines of the property line.